NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2781-15T3

NORMA S. EHRLICH,
 APPROVED FOR PUBLICATION
 Plaintiff-Appellant,
 July 25, 2017
v. APPELLATE DIVISION

JEFFREY J. SOROKIN, M.D.,

 Defendant-Respondent.
————————————————————————————————

 Submitted May 25, 2017 – Decided July 25, 2017

 Before Judges Hoffman, O'Connor and Mawla.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Docket No. L-
 2859-13.

 M. Mark Mendel, LTD., attorneys for
 appellant (John J. Del Casale, on the
 brief).

 Stahl & DeLaurentis, P.C., attorneys for
 respondent (Sharon K. Galpern, on the
 brief).

 The opinion of the court was delivered by

HOFFMAN, J.A.D.

 Plaintiff Norma S. Ehrlich appeals from a January 28, 2016

Law Division order dismissing her complaint against defendant

Jeffrey J. Sorokin, M.D., based on a no-cause jury verdict in

her medical negligence action. This suit arose after plaintiff
suffered complications from a colonoscopy and polypectomy

procedure defendant performed in 2011. On appeal, plaintiff

raises three claims of trial error, asserting the judge (1)

admitted irrelevant evidence regarding informed consent, (2)

delivered inadequate jury instructions on the standard of care,

and (3) admitted net opinion testimony. Following our review of

the record and applicable law, we agree the admission of

informed consent evidence constituted harmful error. R. 2:10-2.

We therefore vacate the order of dismissal and remand for a new

trial consistent with this opinion.

 I.

 We begin by summarizing the most pertinent evidence from

the record. In May 2003, plaintiff first came under the care of

defendant, a gastroenterologist, after her family physician

referred her based upon complaints of back pain and rectal

bleeding. Defendant recommended plaintiff undergo a

colonoscopy, which he performed on May 27, 2003.

 Plaintiff's colonoscopy revealed the presence of a polyp at

the tip of her cecum opposite the ileocecal valve. According to

defendant, because the polyp's size and histologic type made it

a significant risk for malignancy, he recommended plaintiff

undergo surgery to remove a portion of her colon. Plaintiff

declined surgery, so defendant referred her to another

 2 A-2781-15T3
gastroenterologist, Dr. Jerome Waye, one of the few doctors who

— at that time — removed polyps with a colonoscope.

 On November 14, 2003, Dr. Waye performed this procedure;

however, plaintiff subsequently suffered a hemorrhage. In May

2004, plaintiff returned to the care of defendant, who informed

her she needed a surveillance colonoscopy. Because plaintiff

suffered from recurrent polyps, defendant performed five

colonoscopy and polypectomy procedures between 2004 and 2011.

Defendant used several techniques to remove plaintiff's

recurrent polyps. One of these procedures, the "saline lift"

technique, involves injecting fluid into the colon to lift the

polyp from the colon wall. Once lifted, the polyp is usually

removed with a hot or cold snare.

 An alternative procedure, Argon Plasma Coagulation (APC),

utilizes a thin catheter passed through a channel. Conductive

argon gas then passes through the channel to the location of the

polyp, followed by an electrical charge that vaporizes the cells

of the polyp. Unlike the snare technique, the APC catheter does

not make direct contact with the polyp.

 Defendant applied the following techniques to remove polyps

from plaintiff's colon on the following dates:

 November 16, 2004 - saline lift to remove a
 polyp with a hot snare.

 3 A-2781-15T3
 December 28, 2005 - saline lift to remove a
 polyp with hot and cold snares.

 March 20, 2007 - hot snare to remove a
 polyp; at trial, defendant explained he did
 not use saline because his "clinical
 judgment was that it did not need the
 saline."

 September 21, 2009 – hot snare to remove a
 polyp, followed by the APC to "ablate
 whatever remaining polyp tissue was there."

 August 29, 2011 – APC to remove a polyp.

 Following the August 29 procedure, defendant discharged

plaintiff to her home; however, at approximately 3:00 a.m. on

August 30, plaintiff awoke in pain and told her husband, "[C]all

9-1-1[,] I'm in trouble." Emergency personnel transported

plaintiff to Virtua Hospital, where she underwent emergency

surgery. Virtua doctors determined plaintiff suffered from a

perforation of her colon and peritonitis. The doctors performed

a right hemicolectomy, ileostomy, and mucous fistula on

plaintiff. She later underwent surgery to reverse the

ileostomy.

 Plaintiff filed her complaint against defendant on July 12,

2013, alleging he negligently performed the August 2011

procedure by "[f]ailing to inject the polyp and surrounding

colon with Saline to create a cushion underneath the polyp."

She did not assert a claim for lack of informed consent.

 4 A-2781-15T3
 The case proceeded to a jury trial in January 2016. Prior

to testimony, plaintiff moved in limine to exclude evidence

regarding her consent to the colonoscopy procedures from 2003 to

2011. The trial judge denied the motion, finding "the forms and

any information provided to the patient was part of the standard

of care, and therefore relevant." Plaintiff again raised the

issue after opening statements, but the judge reaffirmed his

decision.

 Plaintiff then testified, describing her history of

treatment with defendant. Because the trial court denied

plaintiff's in limine motion to exclude informed consent

evidence, plaintiff's counsel also questioned plaintiff

regarding the various consent forms she signed before each

procedure completed by defendant.1

 On cross-examination, defense counsel asked plaintiff about

the language from one of her consent forms, which stated the

procedure could result in injury and hospitalization. Plaintiff

said the form indicated "passage of the instrument may result in

an injury, but it never said that there would be a possibility

1
 During the charge conference following the conclusion of
testimony, plaintiff's counsel explained that he addressed
informed consent matters during his case in chief only after the
trial court rejected his request to exclude informed consent
evidence as irrelevant.

 5 A-2781-15T3
that my colon might be burnt." Defendant also asked plaintiff

about the 2011 consent form, which she signed in defendant's

office in June 2011, two months before the August 2011

procedure. Plaintiff reiterated defendant never discussed the

potential for burning.

 Plaintiff presented expert testimony from

gastroenterologist Stuart Finkel, M.D., who asserted defendant

deviated from the standard of care in both the 2009 and 2011

procedures. Regarding the 2011 procedure, Dr. Finkel stated the

APC burned plaintiff's colon, resulting in the perforation,

because defendant "failed to perform saline injection lift

technique prior to that application of the APC, which increased

her risk for this particular complication." He noted "that the

finding of a flat, broad, [two] centimeter sessile polyp in . .

. the thinnest area of the colon and most at risk for

perforations" required defendant to "create [a] cushion of

saline" before using the APC; defendant's failure to do so

deviated from the standard of care.

 Defendant presented expert testimony from Timothy Hoops,

M.D. Prior to Dr. Hoops' testimony, the judge held an N.J.R.E.

104 hearing to determine the admissibility of his opinion on

proximate cause. According to Dr. Hoops, plaintiff's multiple

polypectomies likely would have scarred her tissue or resulted

 6 A-2781-15T3
in fibrosis, which would make the saline lift procedure

ineffective by holding down the surface of the tissue. He gave

his opinion to a reasonable degree of medical probability, based

on "years of both my experience, as well as experience of people

that I've seen . . . and on the medical literature." However,

Dr. Hoops conceded none of defendant's records for plaintiff

mentioned scarring or fibrosis. Plaintiff thus moved to

preclude this testimony as net opinion, which the trial judge

denied. Dr. Hoops then testified to this information before the

jury.

 Dr. Hoops also testified that defendant's use of the APC

"was within the accepted standards of care." He noted, "At the

time [the 2011] procedure was performed," there were no

guidelines regarding the use of saline with the APC, and

"[t]here was nothing for it or against it;" in addition, he had

never seen a doctor use them together. He further noted, "[A]t

the time of the procedure . . . there was no evidence that doing

the saline lift would have reduced the risk for perforation."

On cross-examination, Dr. Hoops acknowledged that saline lifts

are "very safe" overall, but added, "[T]here might be some risks

for infection."

 Defendant testified he did not use the saline lift

technique during the August 2011 procedure because "there was no

 7 A-2781-15T3
literature to support the use of the saline lift technique with

an [APC]." He said there is a risk for perforation any time he

performs a colposcopy, and burning a colon is a "known

complication of the use of [the APC] for the performance of

colonoscopy."

 At the end of the testimony, the trial judge allowed the

jury to review plaintiff's informed consent documents as part of

its deliberation. Responding to plaintiff's objection, the

judge stated:

 If you can go and talk about all that Dr.
 Sorokin had done in 2003, 2004, 2005 and so
 on, and exclude this small piece of it, that
 cannot be consistent with notions of justice
 or the search of truth. And maybe if I mis-
 characterized it as going to the standard of
 care that was my fault and a mistake. But
 in a fundamental sense, there could be no
 way to have a fair trial that would allow
 the plaintiff to explore this treatment for
 all these years, include the detail of it,
 including almost every single statement
 written by Dr. Sorokin, and exclude the
 informed consent. That can't be consistent
 with a notion of a fair trial.

 Plaintiff then submitted a proposed jury instruction on the

standard of care. The trial judge denied this request and

proceeded to charge the jury under the model jury charge. The

next day, the jury asked the court to reiterate "the definition

of standard of care[.]" Plaintiff again requested a custom jury

charge, but the judge re-read the previous instruction.

 8 A-2781-15T3
Following additional deliberation, the jury reached a 6-1

verdict that defendant did not breach the standard of care.

 Plaintiff filed a motion for a new trial, which the judge

denied. This appeal followed.

 II.

 We first address plaintiff's contention the trial judge

erred by allowing defendant to present irrelevant and misleading

evidence of her informed consent to the colonoscopy procedures.

Plaintiff argues, because she did not assert a claim for lack of

informed consent, the sole issue was whether defendant was

negligent for failing to perform a saline lift with the APC.

She asserts a new trial is necessary because defendant misled

the jury to believe consent was connected to the standard of

care. We are constrained to agree.

 Our review of the trial court's evidential rulings "is

limited to examining the decision for abuse of discretion."

Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div.) (quoting

Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)), certif. denied, 223

N.J. 163 (2015). We will only reverse if the error "is of such

a nature as to have been clearly capable of producing an unjust

result." Ibid. (quoting R. 2:10-2).

 Pursuant to our rules, evidence is relevant if it has "a

tendency in reason to prove or disprove any fact of consequence

 9 A-2781-15T3
to the determination of the action." N.J.R.E. 401. Relevant

evidence is generally admissible, N.J.R.E. 402, but "may be

excluded if its probative value is substantially outweighed by

the risk of . . . undue prejudice, confusion of issues, or

misleading the jury." N.J.R.E. 403.

 To prevail in a medical malpractice action based upon a

deviation from the standard of care, the plaintiff "must

generally present expert testimony establishing '(1) the

applicable standard of care; (2) a deviation from that standard

of care; and (3) that the deviation proximately caused the

injury.'" Newmark-Shortino v. Buna, 427 N.J. Super. 285, 304

(App. Div. 2012) (quoting Telihaber v. Greene, 320 N.J. Super.

453, 465 (App. Div. 1999)), certif. denied, 213 N.J. 45 (2013).

"A physician must act with that degree of care, knowledge, and

skill ordinarily possessed and exercised in similar situations

by the average member of the profession practicing in the

field." Aiello v. Muhlenberg Reg'l Med. Ctr., 159 N.J. 618, 626

(1999).

 Informed consent is generally unrelated to the standard of

care for performing medical treatment. Eagel v. Newman, 325

N.J. Super. 467, 474-75 (App. Div. 1999).

 [T]he informed-consent basis of malpractice,
 as opposed to deviation from the applicable
 standard of care, rests not upon the
 physician having erred in diagnosis or

 10 A-2781-15T3
 administration of treatment but rather in
 the failure to have provided the patient
 with adequate information regarding the
 risks of a given treatment or with adequate
 information regarding the availability of
 alternative treatments and the comparative
 risks and benefits of each.

 [Ibid.]

 "Although each cause of action is based on different

theoretical underpinnings, 'it is now clear that deviation from

the standard of care and failure to obtain informed consent are

simply sub-groups of a broad claim of medical negligence.'"

Newmark-Shortino, supra, 427 N.J. Super. at 303 (quoting Howard

v. Univ. of Med. & Dentistry of N.J., 172 N.J. 537, 545 (2002)).

However, these theories are distinguishable because they

represent two independent duties: "(1) the duty to diagnose and

treat a patient in accordance with the standard of care; and (2)

the duty to disclose all medically reasonable treatment

alternatives . . . so that a patient may make an informed

decision." Ibid. (citing Matthies v. Mastromonaco, 160 N.J. 26,

39-40 (1999)).

 Plaintiffs must meet a different, four-part test to

establish the prima facie case for lack of informed consent.

See Telihaber, supra, 320 N.J. Super. at 465. "[T]o sustain a

claim based on lack of informed consent, the patient must prove

that the doctor withheld pertinent medical information

 11 A-2781-15T3
concerning the risks of the procedure or treatment, the

alternatives, or the potential results if the procedure or

treatment were not undertaken." Howard, supra, 172 N.J. at 548.

 As plaintiff recognizes, there are no New Jersey cases

specifically addressing the admissibility of informed consent

evidence where the plaintiff has only asserted a claim of

negligent treatment. She therefore relies on cases from other

state courts addressing this issue, in particular a recent

Pennsylvania Supreme Court decision, Brady v. Urbas, 111 A.3d

1155 (Pa. 2015).

 In Brady, the plaintiff asserted a claim for negligent

treatment and moved in limine to exclude any consent-related

evidence; the trial court denied her motion. After reviewing

the evidence during deliberations, the jury returned a verdict

in favor of the plaintiff's doctor. Id. at 1158. On appeal,

the doctor argued the evidence was relevant to establish the

applicable standard of care. Id. at 1159. The Pennsylvania

Supreme Court disagreed, finding "the fact that a patient may

have agreed to a procedure in light of the known risks does not

make it more or less probable that the physician was negligent

in either considering the patient an appropriate candidate for

the operation or in performing it in the post-consent

timeframe." Id. at 1162. The Court also concluded that such

 12 A-2781-15T3
evidence could confuse the jury by distracting it from whether

the doctor breached the standard of care. Id. at 1163-64.

 The other state courts plaintiff cites reached similar

conclusions. See Baird v. Owczarek, 93 A.3d 1222, 1232 (Del.

2014) (agreeing that "evidence of informed consent, such as

consent forms, is both irrelevant and unduly prejudicial in

medical malpractice cases without claims of lack of informed

consent" (quoting Hayes v. Camel, 927 A.2d 880, 889 (Conn.

2007))); Waller v. Aggarwal, 688 N.E.2d 274, 275 (Ohio Ct. App.

1996) ("[T]he issue of informed consent was not relevant to

appellant's claim of negligence."); Wright v. Kaye, 593 S.E.2d

307, 317 (Va. 2004) (holding where the plaintiff did not plead

lack of informed consent, "evidence of information conveyed to

[plaintiff] concerning the risks of surgery in obtaining her

consent is neither relevant nor material to the issue of the

standard of care"); cf. Hayes, supra, 927 A.2d at 889-91

(holding the trial court abused its discretion by admitting such

evidence, but finding the error harmless).

 Additional state courts have found evidence of informed

consent irrelevant and potentially prejudicial where the issue

was negligent treatment. See Schwartz v. Johnson, 49 A.3d 359

(Md. Ct. Spec. App. 2012); Wilson v. Patel, 517 S.W.3d 520 (Mo.

2017); Warren v. Imperia, 287 P.3d 1128 (Or. Ct. App. 2012); cf.

 13 A-2781-15T3
Liscio v. Pinson, 83 P.3d 1149, 1156 (Colo. App. 2003) (finding

informed consent evidence may be irrelevant but not reversible

error where the plaintiff "opened the door").

 Furthermore, although not directly on point, our decision

in Gonzalez v. Silver, 407 N.J. Super. 576 (App. Div. 2009), is

instructive on this issue. Gonzalez was a medical malpractice

action wherein the defendant doctor attempted to introduce

hearsay testimony regarding statements plaintiff made about the

cause of his injury. Id. at 593. We held that such testimony

was irrelevant to the issue of whether or not the defendant

doctor provided proper medical care, and though it was perhaps

relevant for impeachment, it carried "an enormous potential for

prejudice." Id. at 594-95. We concluded the balance "should

have weighed in favor of excluding such evidence." Id. at 595.

 Considering Gonzalez and the non-binding but persuasive

out-of-state cases, we are convinced the admission of the

informed consent evidence in this matter, where plaintiff

asserted only a claim of negligent treatment, constituted

reversible error. The only issue at trial was whether

defendant's use of the APC without a saline lift deviated from

the standard of care. Plaintiff's acknowledgment of the risk

for perforation had no bearing on this determination. Indeed,

although negligent treatment and informed consent fall under the

 14 A-2781-15T3
umbrella of medical negligence, our law clearly distinguishes

the two claims, and they require different elements of proof.

See Newmark-Shortino, supra, 427 N.J. Super. at 304. We

therefore conclude the informed consent evidence was irrelevant

to the issue presented at trial, N.J.R.E. 401, and should have

been excluded on plaintiff's motion in limine.

 We reject defendant's assertion the evidence was relevant

to "counter plaintiff's testimony on direct examination that

[defendant] gave plaintiff absolutely no information about her

condition and treatment." We also disagree with the judge's

end-of-trial conclusion that plaintiff opened the door by

exploring her entire history with defendant. Rather, the record

shows that after twice attempting to exclude this evidence,

plaintiff tried to minimize its damage by addressing it on

direct examination. As the judge incorrectly ruled the informed

consent evidence admissible prior to any testimony, we flatly

reject defendant's attempt to assign relevance to this evidence

after the fact. Moreover, we find defendant went beyond the

purported purpose of rebutting plaintiff's claims by raising the

consent issue during Dr. Hoops' testimony and during summation.

 We further conclude this evidence had the capacity to

mislead the jury, N.J.R.E. 403, thereby making it capable of

producing an unjust result. R. 2:10-2. As the Pennsylvania

 15 A-2781-15T3
Supreme Court noted, "the jury might reason that the patient's

consent to the procedure implies consent to the resultant

injury, see Wright, [supra,] 593 S.E.2d at 317, and thereby lose

sight of the central question pertaining to whether the

defendant's actions conformed to the governing standard of

care." Brady, supra, 111 A.3d at 1163. This was especially

true here, where the jury received the consent forms as part of

their deliberations, immediately after hearing defense counsel's

summation referencing this issue.

 Accordingly, we conclude that the admission of the informed

consent evidence constituted reversible error. We therefore

vacate the dismissal order and remand for a new trial.

 III.

 In order to provide guidance to the court on remand, we

briefly address plaintiff's remaining arguments and find they

lack merit. Plaintiff first argues the trial judge erred by

rejecting her proposed jury charge on the standard of care. The

proposed charge added the following language to the model jury

charge:

 The law recognizes that the practice of
 medicine is not an exact science.
 Therefore, the practice of medicine
 according to accepted medical standards may
 not prevent a poor or unanticipated result.
 However, when a risk is obvious, and a
 precautionary measure available, an industry
 or professional standard that does not call

 16 A-2781-15T3
 for such precaution is not conclusive if,
 regardless of the standard or custom, the
 exercise of reasonable care would call for a
 higher standard. Therefore, whether Dr.
 Sorokin was negligent depends not on the
 outcome but on whether he adhered to or
 departed from the applicable standard of
 care.

 [(emphasis added).]

 Plaintiff based this language on our decision in Estate of

Elkerson v. North Jersey Blood Center, 342 N.J. Super. 219 (App.

Div.), certif. denied, 170 N.J. 390 (2001). In Elkerson, the

plaintiff produced expert testimony establishing that the entire

blood bank industry was following inadequate safety standards in

screening donated blood, when a better test was known and

available. Id. at 233-35. In that context, we held the trial

court erred in limiting the jury to considering whether the

defendant blood bank followed the prevailing industry practice

at the time of the plaintiff's blood transfusion. "[T]he trial

court's negligence charge constitutes reversible error because

it did not allow the jury to reject the industry standard

applied uniformly by blood banks in 1983 in favor of its own

expert-informed judgment in determining whether that custom was

or was not reasonable." Id. at 235.

 Elkerson is inapplicable here because plaintiff did not

produce an expert report to opine the existing standard of care

for APC use was unreasonable. Rather, this was a case where

 17 A-2781-15T3
plaintiff presented expert testimony that the standard of care

required defendant to use the saline lift with the APC, and

defendant presented expert testimony that the standard of care

did not require this technique. Unlike in Elkerson, here no

guidelines stated doctors should not use a saline lift with the

APC. We therefore find the trial judge did not err by rejecting

plaintiff's requested charge.

 Plaintiff also argues the trial judge erred by permitting

Dr. Hoops to deliver net opinion testimony regarding proximate

cause. "The net opinion rule is a 'corollary of [N.J.R.E. 703]

. . . which forbids the admission into evidence of an expert's

conclusions that are not supported by factual evidence or other

data.'" Townsend v. Pierre, 221 N.J. 36, 53-54 (2015)

(alterations in original) (quoting Polzo v. County of Essex, 196

N.J. 569, 583 (2008)). A net opinion is "a bare conclusion

unsupported by factual evidence." Creanga v. Jardal, 185 N.J.

345, 360 (2005). To avoid a net opinion, the expert must "'give

the why and wherefore' that supports the opinion." Townsend,

supra, 221 N.J. at 54 (quoting Borough of Saddle River v. 66 E.

Allendale, LLC, 216 N.J. 115, 144 (2013)).

 Experts are required to "be able to identify the factual

bases for their conclusions, explain their methodology, and

demonstrate that both the factual bases and the methodology are

 18 A-2781-15T3
reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127

N.J. 404, 417 (1992)). The net opinion rule is a "prohibition

against speculative testimony." Harte v. Hand, 433 N.J. Super.

457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J.

Super. 563, 580 (App. Div. 1997), certif. denied, 154 N.J. 607

(1998)).

 Dr. Hoops testified that plaintiff's multiple polypectomies

would have caused scarring in her colon, likely making the

saline lift procedure ineffective. Plaintiff asserts, because

defendant's notes contained no reference to scar tissue, Dr.

Hoops' testimony on this issue "constituted nothing more than

mere speculation." Although the record did not show definitive

evidence of scarring, Dr. Hoops set forth the factual basis for

his opinion, noting in the "majority of cases," a polypectomy

procedure would result in scarring, and it was "[a]bsolutely

more likely than not that . . . [the] area would have been

scarred down and would not have lifted. The . . . saline lift

would have been unsuccessful; you would have had a non-lift

sign." He based this opinion on his medical experience.

Therefore, giving deference to the trial judge's decision on

expert testimony, Townsend, supra, 221 N.J. at 52, we discern no

error in his admission of this evidence.

 Vacated and remanded. We do not retain jurisdiction.

 19 A-2781-15T3