**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4923-18

STEPHEN KOWAL,

    Plaintiff-Respondent,

v.

RANDI HARTMAN, f/k/a
RANDI KOWAL,

    Defendant-Appellant.

_____

Argued December 9, 2021 – Decided December 20, 2021

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0444-04.

John A. Patti argued the cause for appellant (Patti Family Law, attorneys; John A. Patti, on the briefs).

Seth D. Josephson argued the cause for respondent.

PER CURIAM

Defendant Randi Hartman appeals from a June 3, 2019 order terminating plaintiff Stephen Kowal's alimony obligation. We affirm.

The parties were divorced in 2005, following a twenty-five-year marriage. They entered into a Property Settlement Agreement (PSA) wherein plaintiff agreed to pay $400 per week in permanent alimony based on earnings of approximately $110,000 per year and imputed income to defendant of $35,000 per year. The PSA stated the alimony range was between $575 and $600 per week, but the parties agreed to $400 because plaintiff did not seek child support. The PSA contained the following relevant provision:

> Cohabitation by [defendant] shall be an event subjecting alimony to a review consistent with existing case law. [Plaintiff's i]nvoluntary [l]oss of [e]mployment, other than temporary, shall be an event subjecting alimony to a review consistent with existing case law. In the event [plaintiff] is permanently disabled, as defined and to the extent payable by his disability insurance policy, it shall be an event subjecting alimony to review, recalculation derived only from proceeds from said disability insurance policy.
>
> [Emphasis added.]

In 2008, plaintiff moved to modify alimony because he ceased working and became permanently disabled. The court found he made a prima facie

A-4923-18

showing of changed circumstances and scheduled a plenary hearing. However, plaintiff withdrew the motion.

In 2011, defendant moved for entry of a qualified domestic relations order (QDRO) dividing plaintiff's pension, alleging she was entitled to equitable distribution. She also sought an increase in alimony and other financial relief based on plaintiff's alleged increased income. Plaintiff opposed the motion.

The court granted defendant's motion, ordered the QDRO, and increased alimony. Plaintiff sought reconsideration and provided proof the pension benefits were an ordinary disability retirement allowance and not a pension payout and that the allowance did not vest during the marriage. He also argued the parties agreed only plaintiff's disability insurance proceeds could be used to calculate alimony. Defendant disputed plaintiff's claims and income.

The trial court reconsidered, denied equitable distribution of the pension, and directed the parties to file updated Case Information Statements (CIS) to recalculate alimony. Plaintiff submitted a CIS; defendant did not. The court calculated alimony in accordance with the PSA, using only the disability policy proceeds, and reduced alimony to $655.21 per month. Defendant sought reconsideration, which the court denied on January 20, 2012.

A-4923-18

Defendant appealed from the alimony provisions of the 2012 order. We denied her challenge and affirmed the trial court's calculation of alimony, holding "the terms of the PSA limited plaintiff's income to his disability insurance proceeds." Kowal v. Hartman, No. A-2618-11 (App. Div. Feb. 10, 2014) (slip op. at 10-11).

In 2016, plaintiff moved to modify or terminate alimony on grounds of cohabitation. He attached social media postings showing defendant had a romantic relationship and cohabited with Daniel Opielski beginning in March 2015. Plaintiff alleged Opielski paid defendant's living expenses, which reduced defendant's need for alimony. Plaintiff's CIS showed his only sources of income were disability insurance and the ordinary disability retirement pension. The trial judge found plaintiff established a prima facie case of cohabitation and scheduled a plenary hearing.

On November 14, 2016, the judge granted plaintiff's motion in limine to ensure only his disability insurance was considered. The judge cited our prior decision.

In a 2017 plenary hearing, the judge heard testimony from the parties, Opielski, and defendant's mother. He also reviewed seventy-six pieces of

A-4923-18

evidence.  The judge rendered a detailed written opinion finding the witnesses were credible, except for defendant and Opielski.

The judge noted defendant stipulated to cohabiting with Opielski.  He also found other credible evidence of cohabitation, namely, the social media posts in which defendant and Opielski held themselves out as a couple in an "exclusive . . . stable, persistent, and permanent" relationship.  He found defendant benefitted from the cohabitation because it "substantially reduc[ed] her shelter costs[,]" and significantly increased her account balances.[1]  He noted that on cross-examination, "defendant acknowledged that the benefits to her from living with . . . Opielski exceeded $2,700 per month, including eliminated mortgage payments and homeowner association dues, utility bills, repair and maintenance, and other lesser home maintenance costs."  The judge noted even if the deposits to defendant's accounts were excluded, "defendant still benefits from cohabitation by more than $1,700 per month."  The judge found Opielski benefitted economically from the cohabitation because defendant contributed her income to his shelter expenses.

---

[1]  The judge noted there were unidentified deposits to defendant's accounts that plaintiff did not prove came from Opielski, but that defendant had not identified the source of the funds either.

A-4923-18

The judge concluded the economic benefit to defendant from the cohabitation was three to four times the alimony paid by plaintiff. He terminated alimony effective March 2015, the date defendant began living with Opielski, and ordered defendant to repay alimony she received since that date at $100 per month.

Defendant alleged plaintiff committed fraud by concealing the fact his disability insurance proceeds were tax-free. She argued the court was required to "retroactively reverse the financial hardships that have been thrust upon [defendant] in the form of [o]rders[] misinterpret[ing] . . . the [PSA] . . . and intentional concealment of information that should have been provided to [the c]ourt and other [c]ourts going back [to] 2008."

The judge analyzed defendant's claims through the lens of Rule 4:50-1(f). He noted it was undisputed the parties voluntarily entered into the PSA over fourteen years ago and that it was heavily negotiated with the assistance of counsel. The judge also noted the PSA disability provision, which limited a recalculation of alimony based solely on the disability insurance policy "proceeds." He found "[t]he agreement did not envision or require the calculation of a taxable value, as the policy is not subject to taxation" because the PSA's use of the term proceeds meant "the amount of money received from

A-4923-18

the policy[,]" which would be a net figure. The judge concluded plaintiff did not conceal the nontaxable nature of the policy because neither his benefits statements nor his tax returns reported the insurance proceeds as taxable income. Moreover, "defendant never argued in this matter['s] entire history . . . that the term ['proceeds'] meant anything other than the amount received from plaintiff's disability pension." He further noted this "novel argument emerged during this round of litigation" but was "nowhere" in the pleadings she filed prior to the plenary hearing.

The judge also noted plaintiff was declared "permanently disabled within the terms of his disability insurance policy, an event accounted for in the parties' agreement." Citing the prior litigation history, he concluded "the court modified plaintiff's alimony obligation in light of a change of circumstances and denied defendant's motion for reconsideration, and the Appellate Division affirmed the court in all respects." He noted defendant challenged the taxable nature of plaintiff's income during "[t]he parties' 2011 motion practice[,]" and that defendant "pursued her right of appeal, and she lost." The judge concluded the PSA's terms were fair and defendant's arguments were barred by res judicata.

Each party requested counsel fees. The judge conducted a detailed analysis of Rule 5:3-5(c) factors and concluded each should bear their own fees.

Defendant raises the following points on appeal:

I.    THE COURT COMMITTED REVERSIBLE ERROR BARRING EVIDENCE ON THE INTRODUCTION OF PLAINTIFF'S INCOME, INCLUDING PENSION INCOME OTHER THAN HIS DISABILITY INSURANCE PROCEEDS.

II.    THE PSA PROVISIONS REGARDING USE OF ONLY DISABILITY INCOME SHOULD BE SET ASIDE BASED UPON THE FACT THAT THE PENSION WAS NOT DISTRIBUTED AND PLAINTIFF RECEIVES PENSION INCOME.

III.    THE COURT ABUSED ITS DISCRETION BY FAILING TO ADJUST THE AMOUNT OF ALIMONY PURSUANT TO OZOLINS V. OZOLINS, 308 N.J. SUPER. 243 ([APP. DIV.] 1998).

IV.    THE COURT ABUSED ITS DECRETION BY NOT CONSIDERING ALL SOURCES OF INCOME AND RECALCULATING ALIMONY PRIOR TO FORMULATING THE COHABITATION DEDUCTION AND RETROACTIVE ARREARS.

V.    ALIMONY SHOULD BE REESTABLISHED AT THE RATE AGREED TO IN THE PSA.

VI.    THE SUPERIOR COURT ABUSED ITS DISCRETION BY NOT FINDING A VIOLATION PURSUANT TO NEW JERSEY COURT RULE 4:50-1.

VII.    DEFENDANT IS ENTITLED TO RELIEF BASED UPON THE CONCEALMENT BY PLAINTIFF ON THE CIS AND ADMITTED TO BY PLAINTIFF DURING THE PLENARY HEARING.

VIII. COUNSEL FEES SHOULD HAVE BEEN AWARDED BASED UPON THE INTENTIONAL CONCEALMENT BY PLAINTIFF.

IX. COSTS AND ATTORNEY FEES SHOULD BE AWARDED TO DEFENDANT FOR ALL COST[S] OF THIS APPEAL.

"Our review of the trial court's evidential rulings 'is limited to examining the decision for abuse of discretion.'" Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017) (quoting Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015)). We apply the same standard of review to in limine motions adjudicating the admissibility of evidence. State v. Cordero, 438 N.J. Super. 472, 483 (App. Div. 2014).

We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). However, "legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion. Cesare, 154 N.J. at

413. For these reasons, Family Part judges have broad discretion to make alimony determinations. Martindell v. Martindell, 21 N.J. 341, 355 (1956). Counsel fee determinations are also discretionary. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011). Likewise, the denial of a Rule 4:50-1 motion for relief from judgment will not be disturbed absent a clear abuse of discretion. In re Guardianship of J.N.H., 172 N.J. 440, 473 (2002).

Having thoroughly reviewed the record pursuant to these principles, we affirm for the reasons expressed in the trial judge's thorough and well-written opinion. We add the following comments.

"Alimony is an economic right that arises out of the marital relationship and provides the dependent spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage." Quinn v. Quinn, 225 N.J. 34, 48 (2016) (internal quotation marks omitted) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). The Quinn Court stated mutually agreed upon arrangements that are "fair and definitive . . . should not be unnecessarily or lightly disturbed" because

> "the law grants particular leniency to agreements made in the domestic arena" and vests "judges greater discretion when interpreting such agreements." Pacifico [v. Pacifico, 190 N.J. 258, 266 (2007)]. . . . Nevertheless, the court must discern and implement "the common intention of the parties[,]" Tessmar [v.

Grosner, 23 N.J. 193, 201 (1957)], and "enforce [the mutual agreement] as written[,]" Kampf [v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)].

[Quinn, 225 N.J. at 44-46 (second, fourth, and fifth alterations in original).]

We reject defendant's arguments. The facts, evidence, and circumstances did not support deviating from the parties' clearly worded agreement. Only the disability insurance proceeds could be considered for alimony purposes. This conclusion was underscored by the fact the cohabitation was clearly proven and showed defendant's lifestyle with Opielski was enhanced to the point it exponentially exceeded the alimony, which defendant no longer needed. Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4923-18