**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0572-22

JOHN VALDEZ,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

GEORGE MITILENES and
HORSEHILL PROPERTIES,
LLC,

       Defendants-Appellants/
       Cross-Respondents.

_____

Submitted January 29, 2024 – Decided February 8, 2024

Before Judges Sabatino and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0584-19.

Donnelly Minter & Kelly, LLC, attorneys for appellants/cross-respondents (Patrick B. Minter, of counsel; Thomas J. Coffey, III, and Alison L. Moody, on the briefs).

The Harrell Law Firm, LLC, attorneys for respondent/cross-appellant (Kenneth McCall Harrell and Leigh Ann Raffauf, on the brief).

PER CURIAM

This personal injury case arose from an accident in New York City on June 18, 2018, in which a pickup truck owned by defendant Horsehill Properties, LLC, and driven by defendant George Mitilenes collided with a car owned and driven by plaintiff John Valdez. Plaintiff sustained neck and back injuries as a result of the collision. He had cervical and lumbar injections, culminating with lumbar fusion surgery in May 2019.

The case was tried before a jury in May 2022 during the COVID-19 pandemic. The jury found defendant 80% at fault for the accident and plaintiff 20% comparatively negligent. Those liability findings have not been appealed.

As for damages, the jury awarded plaintiff $20,000 in pain and suffering, $80,000 in past lost wages, and $230,000 for unpaid medical expenses above his $50,000 Personal Injury Protection ("PIP") coverage. These figures were molded by the court and reduced by 20% to take into account plaintiff's comparative fault. The net award, as molded, was $263,966.63. The court also awarded $14,183.23 in prejudgment interest.

I.

Defendants solely raise issues on appeal contesting the award of damages. In particular, defendants appeal the trial court's decisions allowing plaintiff to present to the jury a lost wage claim and evidence of unpaid medical bills.

Plaintiff cross-appeals, solely with respect to the trial court's undercalculation of prejudgment interest. Defendants agree prejudgment interest was calculated incorrectly.

For the reasons that follow, we affirm the damages awarded by the jury and therefore deny defendants' appeal. However, as to plaintiff's unopposed cross-appeal, we remand to the trial court to correct its calculation of prejudgment interest.

A.

We first consider defendants' challenge to the award of lost wages. This is the pertinent background.

Before the accident, plaintiff did general maintenance work at an apartment complex. He testified that he could no longer perform those tasks after the accident because, in his words, it was "heavy duty work."

To substantiate his injuries, plaintiff presented expert testimony from his treating orthopedic surgeon. The surgeon first saw plaintiff in October 2018, at

3

which time plaintiff presented with neck and back pain extending into his hips and legs. The surgeon reexamined plaintiff in March 2019, and noted plaintiff's symptoms had worsened. According to the surgeon, plaintiff's responses to a low back pain questionnaire rated him 100% disabled. Eventually, the surgeon performed the aforementioned fusion procedure in May 2019. Plaintiff reported that the surgery improved his condition. The surgeon opined that plaintiff's condition was causally related to the motor vehicle accident, and that the medical treatment provided to him was necessary and appropriate.

Defendants' orthopedic expert examined plaintiff in June 2020, about a year after his surgery. Based on that examination and a review of the pertinent records, the defense expert opined that plaintiff exhibited a normal range of cervical motion, but a diminished lumbar range of motion that would be expected from a lumbar fusion. The examination was otherwise normal.

Defendants maintain plaintiff did not present sufficient evidence to establish his claim of lost wages. They stress that his medical expert did not specify in his testimony that plaintiff was unable to work after the accident. Defendants consequently moved to dismiss the lost wage claim at the end of plaintiff's case in chief. The trial court denied that midtrial motion, without

prejudice. Defendants renewed the motion at the end of the trial, and the court reserved its decision.

After the jury verdict was returned, the court heard further argument on the lost wages issue. Following that argument, the court denied defendants' motion. With respect to plaintiff's inability to work, the court noted that plaintiff had presented evidence of his limited post-accident range of motion of his arm, neck, and shoulder.

The court also noted that the jury had specifically inquired during their deliberations about the dates on which the parties' medical experts had examined plaintiff, which was indicative of their attentiveness to the timing of plaintiff's recovery. In fact, as plaintiff's brief points out, the jury's $80,000 lost wages award is roughly consistent with a determination that plaintiff was able to resume work by the time he was examined by the defense orthopedist in June 2020.

On appeal, defendants repeat their contention that plaintiff's wage claim lacked sufficient evidential support. We reject that contention. To be sure, a personal injury plaintiff seeking recovery of lost wages has the burden of showing by a preponderance of the evidence that plaintiff was unable to work as the result of injuries caused by the subject accident. Caldwell v. Haynes, 136

N.J. 422, 436 (1994); see also Model Jury Charges (Civil), 8.11C, "Loss of Earnings" (Jul. 2010).

Plaintiff presented adequate credible evidence here to satisfy that burden, including but not limited to his own testimony recounting his post-accident limitations and the nature of his work as a maintenance employee, his treating surgeon's findings of his condition and the consequences of his treatment, his 100% rating on the disability questionnaire, and the corroborating medical records moved into evidence.

Although plaintiff's doctor did not specifically state in his testimony that plaintiff was unable to perform his job duties after the accident, the jury could have reasonably inferred that physical condition from the evidence as a whole. Indeed, the jury reasonably cut off the lost wages as of the time when defendants' expert determined he had recovered most of his physical capabilities. The wage calculations themselves for the three years in question (2018, 2019 and part of 2020) were amply supported by unopposed testimony from plaintiff's expert accountant.

A-0572-22

B.

Defendants further argue the trial court erred in allowing plaintiff to be reimbursed for unpaid medical expenses. This issue was also the subject of midtrial and post-trial motions by defendants, which the trial court denied.

It is undisputed that, under the terms of his automobile insurance policy and applicable New York law, plaintiff's PIP coverage was capped at $50,000. Once plaintiff's medical bills exhausted that cap, he was eligible to have the jury award him the reasonable amount of unpaid bills over that threshold.

Plaintiff retained an expert in medical billing to evaluate the charges for the medical services he had been provided. The expert reviewed the bills as they existed prior to trial. She rendered a report that was served on the defense on January 12, 2021, approximately two weeks after the discovery period ended, along with a certification under Rule 4:17-7. Her report opined that plaintiff had incurred medical bills totaling $296,778.58, based on usual and customary rates.

Despite the fact that the billing expert's report was served slightly out of time, defendants did not move to strike it before trial. The trial took place over a year later in May 2022.

7

After the trial started, plaintiff's billing expert updated her opinions and calculations based on the results of recent PIP arbitrations involving plaintiff's medical providers. Her updated report was served on defendants before she testified. In her testimony, the expert explained her calculations and why she concluded that plaintiff's medical bills substantially exceeded the $50,000 PIP cap.

We discern no abuse of discretion in the trial court's decision to allow plaintiff's medical billing expert to present her opinions and calculations to the jury. See Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017) (reiterating the well-settled principle that trial court rulings on the admissibility of evidence are generally reviewed on appeal by an abuse-of-discretion standard). The expert presented a sound basis for her analysis of the bills.

In addition, we decline defendants' urging that we vacate the unpaid medical expense award as a sanction for plaintiff serving the report and the updated report outside of the discovery period. As we noted, defendants did not lodge a timely objection to the late report when it was served, and took no action for more than a year thereafter until the time of trial. The trial court did not misapply its wide discretion over discovery-related matters in declining to impose sanctions on plaintiff, in the circumstances presented. Pomerantz Paper

Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (recognizing the civil trial court's wide discretion over discovery-related matters).

Moreover, as plaintiff's brief points out, the collateral source rule codified at N.J.S.A. 2A:15-97 precludes a double recovery of medical expenses. The record contains no evidence that plaintiff's medical providers accepted their portions of the PIP cap, as determined in arbitration, as payment in full. We conclude the award of unpaid medical expenses was proper and should be sustained. Perreira v. Rediger, 169 N.J. 399, 409 (2001).

## II.

As noted above, plaintiff's cross-appeal asserts that the final judgment miscalculated prejudgment interest by omitting the two percent enhancement prescribed by Rule 4:42-11(a)(iii). Defendant does not dispute this omission, nor the need to remand for recalculation of the interest award. Accordingly, we grant the unopposed relief sought in the cross-appeal.

Affirmed in part, remanded in part as to the prejudgment interest calculation. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0572-22