**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0768-22

SAKINAH RICE, individually, and
as administrator ad prosequendum
of the Estate of CHRISTOPHER
RICE,

     Plaintiff-Appellant,

v.

GOLD MEDAL
ENVIRONMENTAL OF NJ, INC.,
GOLD MEDAL SERVICES, LLC,
GOLD MEDAL GROUP, LLC,
GOLD MEDAL DISPOSAL, INC.,
GOLD MEDAL, LLC, GOLD
MEDAL ENVIRONMENTAL OF
PA, INC., and MACK TRUCKS,
INC.,

     Defendants,

and

MCNEILUS TRUCK AND
MANUFACTURING, INC.,

     Defendant-Respondent.

_____

Argued November 9, 2023 – Decided March 28, 2024

Before Judges Accurso, Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1906-19.

Brett McPherson Furber argued the cause for appellant (Messa & Associates, PC, attorneys; Brett McPherson Furber, on the briefs).

Dennis P. Ziemba argued the cause for respondent (Dilworth Paxson, LLP, attorneys; Dennis P. Ziemba and Robert P. Zoller, on the brief).

PER CURIAM

In this wrongful-death and survival case, plaintiff Sakinah Rice, administratrix ad prosequendum for the estate of her deceased husband, Christopher Rice, appeals a December 17, 2021 order granting defendant McNeilus Truck and Manufacturing Inc. summary judgment as to all claims on the basis that plaintiff's liability expert's report constitutes a net opinion. Plaintiff argues the court abused its discretion when it ruled the expert had offered a net opinion and granted defendant's motion. Plaintiff also argues that the court erred in denying the motion for reconsideration in a November 9, 2022 order. Because we discern no error, we affirm.

A-0768-22

The relevant facts are undisputed. Gold Medal Services employed Christopher Rice as a trash collector. On June 6, 2017, Rice was standing on the passenger-side rear platform of a refuse truck designed by defendant when the rear of the truck collided with a telephone pole located on the side of the roadway, pinning Rice. Rice suffered injuries and died at the scene.

At the time of Rice's death, Marcus Stotts, a fellow employee, was driving the refuse truck. Stotts was familiar with the route they were scheduled to work on the day of Rice's death. He testified he had met Rice for the first time on the morning of the accident, and Rice was scheduled to be his helper.

According to Stotts, as they began their route that morning, Rice was standing on the rear side step, only getting off to pick up trash and throw it into the back of the truck. He testified he had told Rice to get off the rear side step and to "get in the truck" at least four times that day "for safety reasons" because of the distance between the trash pickup locations. Gold Medal's Driver & Helper Safety Rules & Procedures manual directs that "[w]hen the truck is traveling a long distance (more than [two-tenths of one mile] or over [ten miles per hour]), ride in the cab and wear the seatbelt." The truck Stotts was driving that day had clear warning labels affixed above the rear step with instructions in both English and Spanish on how to use the rear step safely and warning users

not to "use riding step when speeds are expected to exceed [ten miles per hour] or when distance traveled is in excess of two-tenths of one mile. Riding step shall not be used when vehicle is moving backwards."

Despite these warnings and instructions to get into the cab of the truck, Rice stayed on the rear side step. Stotts drove the route with Rice standing on the rear step. Stotts testified he had heard Rice on the phone arguing with his wife prior to the accident, and he had exited of the cab of the truck and picked up the trash while Rice remained on the step talking on the phone. Before proceeding to the next trash pickup stop, which was "more than a mile" away, Stotts again told Rice to get in the truck because he knew they would be going over twenty miles per hour. Rice, however, remained on the rear side step, when the truck struck the utility pole.

Stotts testified the accident happened because "I got too close to the pole." He stated that before driving away, he had checked the side mirror and "didn't notice anything," although he also testified he had "seen the pole there" and "tried to avoid the pole." According to Stotts, right before impact, he saw Rice in his side mirror "facing towards the rear of the truck," holding onto the grab bar above the rear step with both feet planted on the step. When Stotts ran to

4

the back of the truck to check on Rice, he was on the ground, "bleeding out the nose, bleeding out the mouth" and "unresponsive."

The chassis of the refuse truck Rice and Stotts were using was built, designed and manufactured by Mack Trucks. However, the truck's body was built, designed, and manufactured by defendant McNeilus. Plaintiff filed suit against Gold Medal, Mack Trucks, and McNeilus, alleging various claims in violation of New Jersey's Products Liability Act, N.J.S.A. 2A:58C-1 to 7, related to the defective design of the refuse truck, which plaintiff claims caused Rice's death. Specifically, plaintiff alleged that defendants' truck contained design and manufacturing defects that rendered it unreasonably dangerous when used in its "ordinary and foreseeable ways." The defects purportedly included "defendants' failure to equip the truck with cameras, including side cameras, the failure to equip the truck with [a] lane departure alert and the failure to equip the truck with a safe platform for riders."

Plaintiff settled with Gold Medal, and the court entered final judgment dismissing the complaint against it prior to granting McNeilus's motion for summary judgment.

Plaintiff retained Christopher Ferrone, a mechanical engineer, as an expert in the design of large commercial vehicles. Ferrone opined that the design of

A-0768-22

the truck was defective due to the hazard of placing a human being on the rear side step—outside the width of the truck—exactly where Rice was located when he struck the roadside utility pole:

> McNeilus XC3213 rear-loading waste collection body was defectively designed and manufactured by McNeilus while in their control. The defective and dangerous design was a cause of Mr. Rice's injuries and death. The design requires a user to stand on the back of a moving vehicle, on a platform that extends beyond the body of the truck, in a blind-spot, with no protection for that user. The user who stands on the rear step(s) is exposed to the following foreseeable situations, all of which create a likelihood of serious injury;
>
> being struck by objects
> being swiped off the step
> being hit by another vehicle
> being partially dragged by the waste truck
> falling off the step.

In his report, Ferrone did not specifically reference any engineering standards. Although he reviewed several documents including a "Review of Safety Strategies According to the Safety Hierarchy," nowhere does he define or analyze safety standards that support his conclusion. At his deposition, Ferrone relied on the "design safety hierarchy" and testified that the hierarchy is a multi-step analysis: first, the manufacturer must determine if the hazard can be eliminated by an alternate design and, if not, the manufacturer must take steps to "guard" against the hazard, and only if that too proves unfeasible, to warn

6

against it. However, "[i]f you can't warn about it, you try to train it out with administrative steps, and if you can't do that you provide personal protection."

Applying the "design safety hierarchy" to the particular truck model with rear side step designed by defendant, Ferrone maintained that the rear step hazard can be designed out, stating "can I design out this one hazard, and the answer is yes. The design out feature [is] don't include the step."

Ferrone further opined that because defendant already sold trucks with alternative designs without the step that "performed the exact same function," the truck designed with a rear step violated the safety hierarchy. He concluded that "[defendant] failed [] the first step [of the hierarchy] and they did not even conduct their own hazard analysis" and "[t]hey failed the second step [of the hierarchy] as well, as they didn't account for foreseeable uses and misuses of the product."

Ferrone also opined defendant should have provided a camera system, as that "would provide the driver with a view of the user on the rear platform." He maintained that a camera system was readily available, inexpensive, and would have helped to prevent the accident and Rice's death. Ferrone concluded that defendant's defectively-designed truck was a cause of Rice's death.

A-0768-22

Following oral argument on defendant's motion for summary judgment, the court found Ferrone had presented a "classic net opinion." Although taking judicial notice that the hierarchy of product design is accepted in the field of engineering, the court determined Ferrone's opinion on the design of the rear step was baseless, stating:

> [Ferrone] doesn't rely on any standards. He didn't do any testing. He didn't do any utility testing. He doesn't address what standards there are in the industry. He's basically saying because of what I find, because of what I believe, because of how I would have done it.
>
>    . . . .
>
> [I]f that expert goes out and does testing and demonstrates by way of physical analysis, by way of physics, by way of biology, by way of human element factors, all the factors involved to establish that his design should be utilized, and he gets to argue that, and economic factors, and manufacturing standards, and if the lone voice in the woods, you know, pushes the industry to a more safe standard that's how it happens, but not in this case where he hasn't done that legwork, he hasn't done that legwork, he's just saying it's because of me, because I think so, and that is a classic net opinion.

As to Ferrone's opinion on the feasibility of a camera system, the court stated:

> [Ferrone] doesn't cite any standards for cameras, he doesn't cite any standards for internal cabs and the elimination of rear steps in all respects, and that your

8

> truck had the proper warnings, and that the mirrors gave all the information to [Stotts] that he needed, because he in fact actually saw the decedent.

The court found that as to the camera system, Ferrone essentially presented a lay opinion and that its potential aid to a juror was dubious:

> even putting that aside [Stotts] used the mirror and he saw [plaintiff], and he doesn't unsee [plaintiff] at any point. His testimony is clear. And even if there's nothing, it's uncontroverted testimony that at all relevant points in time related to this accident Mr. [Stotts] knew that Mr. Rice was on the rear and that he began to drive with Mr. Rice on the rear step.

Based on those findings, the court granted defendant's summary-judgment motion, dismissed plaintiff's complaint, and denied the subsequent motion for reconsideration. This appeal followed.

Plaintiff asserts the court erred in finding Ferrone's report constituted a net opinion because Ferrone "relied upon [an] accepted design principle as the basis for concluding that the rear riding step should not be a part of the truck's design." Plaintiff highlights that the court took judicial notice of the hierarchy of product design and noted it is an accepted engineering principle. She argues Ferrone established "a sufficient basis and logically support[ed] his opinion." Plaintiff further maintains the court's "issues regarding testing and industry standards are relevant for cross examination but not admissibility," and the court

abused its discretion when it relied on the product's design being consistent with an industry standard[1] as a reason to disqualify Ferrone—arguing the Appellate Division has rejected the idea that industry standards form the basis for admissible design opinions. Additionally, plaintiff argues the court ignored that defendant sold another model of the refuse truck without the rear step and with a camera, undercutting the court's finding that Ferrone failed to conduct testing on the "feasibility of an alternative design when one already exists."

Defendant contends the court properly determined plaintiff had failed to provide any evidence to establish that any aspect of the design of the refuse truck proximately caused Rice's injuries. As to Ferrone's opinion about the need for a camera system, it countered that Rice had decided to remain on the rear step of the truck prior to the accident despite his training, multiple posted warnings on the truck about the hazard of staying on the rear step when the truck was traveling in excess of ten miles per hour, and at least four requests from Stotts that he get into the cab.

---

[1] McNeilus contended the truck with rear side step complies in all respects with the "Mobile Waste and Recyclable Materials Collection, Transportation, and Compaction Equipment" American National Standards Institute (ANSI) standard.

We review de novo a ruling on summary judgment, applying the same legal standard as the trial court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A trial judge's decision concerning the admission of expert testimony into evidence is entitled to our deference and is reviewed under an abuse-of-discretion standard. See Townsend v. Pierre, 221 N.J. 36, 52 (2015) (finding the decision to admit or exclude expert testimony is "committed to the sound discretion of the trial court").

"New Jersey Rules of Evidence 702 and 703 control the admission of expert testimony." In re Accutane Litig., 234 N.J. 340, 348 (2018). N.J.R.E. 702 identifies when expert testimony is permissible and requires the expert to be qualified in his or her respective field. The purpose of admitting expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue," N.J.R.E. 702, by presenting testimony "concern[ing] a subject matter that is beyond the ken of the average juror," Landrigan v. Celotex Corp., 127 N.J. 404, 413 (1992).

N.J.R.E. 703 addresses the foundation for expert testimony. Expert opinions must "be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is

11

the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [Rule 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (quoting Polzo, 196 N.J. at 583).

An expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Crispino v. Twp. of Sparta, 243 N.J. 234, 257 (2020) (quoting Townsend, 221 N.J. at 54). The net opinion rule directs "that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Townsend, 221 N.J. at 55 (quoting Landrigan, 127 N.J. at 417). "An expert's conclusion 'is excluded if it is based merely on unfounded speculation and unquantified possibilities'" because "when an expert speculates, 'he [or she] ceases to be an aid to the trier of fact and becomes nothing more than an additional juror,'" thereby affording no benefit to the fact finder. Ibid. (first quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997); then quoting Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996)); see also Ehrlich v. Sorokin, 451 N.J. Super. 119, 134 (App. Div. 2017) ("The net opinion rule is a 'prohibition against speculative

testimony.'" (quoting <u>Harte v. Hand</u>, 433 N.J. Super. 457, 465 (App. Div. 2013))).

Applying those principles, we conclude the motion court correctly ruled Ferrone's opinion that the rear-loading refuse truck with rear side step was defective constitutes a net opinion because Ferrone does not rely on any standards to support his opinion. Instead, Ferrone simply concluded the truck could be designed without the step, without considering its utility or whether the grab bar and the warnings about the use of the step made it safe for its intended purpose.

Beyond having no support for his expert opinion, there is no dispute in the record that defendant's truck design, including the rear step, satisfies the "Mobile Waste and Recyclable Materials Collection, Transportation, and Compaction Equipment" ANSI standard proffered by defendant. Notably, Ferrone does not disagree with that conclusion. Despite his concession, however, he does not address the ANSI standard—or any engineering standard at all—and does not balance the risk of the rear step against its utility. Thus, Ferrone's opinion that the rear side step is defective because it exposes the user to being struck by objects or swept from the step constitutes a net opinion because it utterly fails to present any support for it, <u>see</u> <u>Crispino</u>, 243 N.J. at 257

(explaining a net opinion is unsupported by any testing or evidence or standard and fails to give the "why and wherefore" that would benefit the fact finder).

Moreover, because Ferrone's testimony was the only avenue plaintiff had to prove the defective design of the truck proximately caused Rice's death, plaintiff cannot establish proximate cause—an essential element of any products-liability case. Without establishing causation, summary judgment was therefore proper, and defendant is entitled to dismissal of plaintiff's claims as a matter of law.

Similarly, Ferrone's opinion that defendant's trucks are, in effect, defective without a camera system on the rear of the truck is also devoid of support. This case is not about Stott's failure to observe Rice while he was on the rear side step of the truck. It is uncontested that Stotts could see Rice in his side mirror and did so in the seconds before the accident. There is no proof that defendant's failure to have installed a camera system contributed in any way to this tragic accident.

Accordingly, we see no basis to disturb the court's finding that plaintiff's expert offered a net opinion. Thus, the court's grant of summary judgment in favor of defendant was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0768-22