**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0608-22

STATE OF NEW JERSEY, by the DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Plaintiff-Respondent,

v.

3.723-ACRES OF LAND IN THE BOROUGH OF POINT PLEASANT BEACH, OCEAN COUNTY, NEW JERSEY, POINT PLEASANT BEACH & SURF CLUB, INC., a New Jersey corporation, fee owner.

Defendant-Appellant.

_______________________________

Argued February 12, 2024 – Decided February 21, 2024

Before Judges Mawla, Marczyk, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3077-17.

Peter H. Wegener argued the cause for appellant (Bathgate, Wegener & Wolf, attorneys; Peter H. Wegener, on the briefs).

Richard G. Scott argued the cause for respondent (Rutter & Roy, LLP, attorneys; Brian Welch Keatts, on the brief).

PER CURIAM

Defendant Point Pleasant Beach & Surf Club, Inc. appeals from: a July 1, 2022 order fixing just compensation for a taking by plaintiff New Jersey Department of Environmental Protection (DEP) following a jury trial; an August 12, 2022 order denying defendant's judgment notwithstanding the verdict (JNOV), a new trial, or additur; and an October 5, 2022 final judgment. We affirm.

This dispute concerns an eminent domain action commenced by the DEP for a storm drain reduction easement (SDRE) on a 3.723 acre property with 540 feet of frontage located at the north end of the Manasquan Inlet to the Barnegat Inlet Storm Damage Reduction Project in Point Pleasant. The DEP and the United States Army Corps of Engineers created the project to protect the New Jersey shoreline by constructing a dune and berm system.

Defendant is the owner of property on Point Pleasant Beach consisting of sand beaches on two adjoining, unbuildable recreational beach lots that extend to the mean high-water line. It has operated the property as a beach club and sells memberships and beach badges to the public. An SDRE was proposed to

encompass both of defendant's lots and the construction of a dune averaging 178 feet long and approximately twenty-two feet high. A dune or beach berm was planned to extend the mean-high-water line and expand beach area.

In November 2017, the DEP filed a condemnation complaint under the Eminent Domain Act, N.J.S.A. 20:3-1 to -47, against defendant. In December 2017, the court entered a final judgment declaring the DEP duly exercised its power of eminent domain, and appointed commissioners to examine the land and fix the compensation to be paid. Following a hearing, the commissioners issued their report setting forth the fair market value of the property.

Defendant appealed from the report of the commissioners. The DEP filed a notice of appeal from the report of commissioners and a jury demand. The trial court granted the appeal from the commissioners' award and granted the request for a jury trial.

Pre-trial, defendant moved to bar a portion of the DEP's appraisal expert's testimony on net opinion grounds. The trial judge denied the motion because it was the eve of trial and defendant had not filed a timely motion to bar.

The matter was tried over the course of four days. On the third day of trial, the DEP served an updated appraisal report. On July 1, 2022, the jury returned a verdict awarding defendant $75,245 in just compensation.

The judge denied defendant's post-judgment motions for JNOV or alternatively for a new trial or additur. He reasoned the only way he could grant JNOV was if the DEP's expert testimony were denied in its entirety, and he had already denied defendant's pre-trial motion to bar the expert's report and testimony. The judge denied the motion for a new trial because both parties presented expert testimony from their appraisers who both "gave lengthy, detailed testimony as to . . . the value of the . . . property both before and after the taking. Moreover, both experts explained and justified their respective methodology in arriving at their opinions as to those values." And "both . . . were extensively cross-examined whereby their methodology was challenged." The judge concluded the experts' credibility was a matter for the jury to decide.

The trial judge noted the law requires clear and convincing evidence the jury verdict constituted a miscarriage of justice to overturn the verdict. The record lacked such evidence because "real estate appraisal is not an exact science" and the appraisers, "in arriving at their values, make certain adjustments based upon [an] assumption[] of facts they believe to be present. That was certainly done by both appraisers here. More importantly, . . . both appraisers gave the 'why and wherefore' justifying their methodology." The

judge also concluded there was "no basis for an additur . . . [because] the jury verdict was in excess of [the DEP expert's] opinion as to value."

I.

Defendant argues the pre-trial ruling denying its motion to bar the expert's testimony because it was untimely was wrong, because Rule 4:46-1's requirement that the motion be returnable thirty days before trial or with twenty-eight days' notice is permissive and not intended to allow unqualified net opinions to reach the jury. Defendant asserts the trial judge should have adjudicated the motion on the merits and ruled on its net opinion objection.[1]

"Unless otherwise ordered or permitted by the court," Rule 4:25-8(a)(2) directs that motions in limine be served seven days prior to trial with the pre-trial exchange of information, pursuant to Rule 4:25-7(b). Pre-trial summary judgment motions must be returnable no less than thirty days before trial unless the court otherwise orders for good cause shown. R. 4:46-1.

At the outset we note, defendant's argument its pre-trial motion was not dispositive is belied by the fact that it also argues the court should have heard it, notwithstanding the timelines set forth under Rule 4:46-1. Whether a motion states it is for summary judgment is not controlling. Rather, if the effect of the

[1] We address the net opinion issue in section II.

motion is to seek the termination of an action, adequate notice of the sort envisioned by Rule 4:46-1 is required. Indeed, the filing or consideration of a dispositive in limine motion is not permitted. R. 4:25-8(a)(1). As Rule 4:25-8(a)(1) states: "A dispositive motion falling outside the purview of this rule would include, but not be limited to, an application to bar an expert's testimony in which such testimony is required as a matter of law to sustain a party's burden of proof."

Defendant's pre-trial motion sought to strike the main conclusion of the DEP expert's testimony, crippling the DEP's ability to carry its burden of proof. This would leave defendant's appraisal expert as the only expert testimony on value submitted to the jury. For these reasons, the trial court properly declined to adjudicate the untimely motion.

II.

Defendant challenges the trial judge's post-judgment motion rulings. It argues a new trial should have been granted because the DEP expert's testimony was a net opinion, and it was a clear miscarriage of justice for the jury to rely upon it without the judge first scrutinizing it.

Defendant cites several alleged flaws with the DEP expert's report. It claims the expert's methodology was flawed because she based the after-taking

value of the property on the presence of an "elevated beach berm," which provided added protection to the property, but there was no such berm built. The DEP expert claimed she calculated the value of the property using the income approach yet did not account for defendant's argument the appraisal was invalid, because it did not consider that N.J.A.C. 7:7-16.9 limits an owner's ability to charge for access to the beach from its property to operating expenses. In other words, the property was not a revenue generator for defendant, and it was not a consideration for appraisal purposes.

Further, the DEP expert relied on paired sales using properties that were not comparable to defendant's, namely, buildable beach lots that were not subject to an easement. The expert considered the loss of exclusivity as a function of how the property was being used by defendant, when she should have viewed it as a property right that could no longer be transferred to a prospective purchaser. And the DEP appraisal violated the Uniform Appraisal Standards for Federal Land Acquisitions (UASFLA) because it only addressed "the current management practices of the present owners and not the loss of the property interest conveyed." The UASFLA requires the assessor to consider the price a prospective buyer is willing to pay before an easement is imposed, compared to the price they are willing to pay after.

"A jury verdict, although not sacrosanct, is entitled to great deference." Long Branch v. Jui Yung Liu, 203 N.J. 464, 492 (2010). "The standard for granting a [JNOV] is essentially the same as that applicable to the grant of a new trial motion." Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:40-2 (2024). "A motion for a new trial or, alternatively, an additur, based on a claim that a jury award was against the weight of the evidence, should not be granted unless it 'clearly and convincingly appears' that the award was so deficient that it constitutes a 'miscarriage of justice.'" Long Branch, 203 N.J. at 492 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977)); see also R. 4:49-1.

The court shall give "due regard to the opportunity of the jury to pass upon the credibility of the witnesses" in deciding if "there was a miscarriage of justice under the law." R. 4:49-1(a). A "'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521-22 (2011)). We review a trial court's denial of a motion for a

JNOV or new trial applying the same standard as the trial court. Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016).

"Our review of the trial court's evidential rulings 'is limited to examining the decision for abuse of discretion.'" Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017) (quoting Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015)). On appeal, we do not substitute our judgment "for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." State v. Singh, 245 N.J. 1, 13 (2021) (internal quotation marks omitted) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

Expert testimony must be grounded in "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts . . . ." Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)). "The net opinion rule . . . forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015). "To avoid a net opinion, the expert must 'give the why and wherefore' that supports the opinion." Ehrlich, 451 N.J. Super. at 134 (quoting Townsend, 221 N.J. at 54).

The DEP expert opined the before-taking value of defendant's property was $1,033,400 and the after value, with mitigation, was $1,020,700. Therefore, defendant was entitled to the difference as just compensation for the taking of $12,700. Her report noted she sent a certified letter of inspection to defendant on September 26, 2016, advising she intended to inspect the property on October 12, 2016. However, defendant did not respond to the letter. Therefore, she inspected the property on November 3, 2017, "from public areas." She also looked at the property on September 28, 2016.

The expert reviewed market data including "deeds recorded at respective counties, tax assessors' property data records, actual measurements . . . , inspection and photographs taken by [her], verifications with parties to the sale including either the buyer, seller, attorney, or broker. Other sources include[d] aerial photographs taken from either Bing.com or Google.com websites." She confirmed all the relevant data "to the fullest possible extent, with buyers and sellers, real estate brokers or appraisers, and attorneys, and also through analysis of deeds and mortgage documents." She summarized the data she analyzed as follows:

> A) Demographic Information regarding the subject County and Municipality spanning 2007 to 2017. Geographic area included all of the State of New Jersey from 2007 to 2017.

> B) Point Pleasant Beach Borough Market Information including average home sale prices, days on the market and number of homes sold for the time period including 2007 to 2017.
>
> C) Site Specific Information
>
> 1) Site Inspection
> 2) Land Area
> 3) Site Improvement information
> a) Square Footage
> b) Site Description and Use
> 4) Zoning
> 5) Assessment Data
>
> D) Sales Data
>
> 1) Beach Land Sales along the New Jersey Shoreline from 2007 to 2017.

The expert explained she considered the cost, sales comparison, and the income approaches to valuation. Under the cost approach, "[a] reproduction or replacement cost new for the improvements is first determined, then total depreciation and obsolescence from all causes is deducted in order to determine an improvement value." Because defendant's property is recreational beach land, there were minor improvements to the subject property.

The expert defined the income capitalization approach as deriving value based on a property's "earning capability . . . calculated by the capitalization of [the] property['s] income." She concluded the income capitalization approach

was not a proper methodology because defendant's property is privately owned and defendant does not have a permit to sell beach badges. She also declined to employ this valuation method because defendant did not provide her with its financial records until April 2022.

The expert explained the sales comparison (paired sales) approach derives value by "comparing sales of similar properties to the properties being appraised, identifying appropriate units of comparison, and making adjustments to the sale prices . . . of comparable properties based on relevant, market-derived elements of comparison." She noted this approach "may be used to value improved properties, vacant land, or land being considered as though vacant when an adequate supply of comparable sales are available . . . ." However, this approach depends on "(a) the availability of comparable sales data, (b) the verification of sales data, (c) the degree of comparability of extent of adjustments necessary for time differences, and (d) the absence of nontypical conditions affecting the sales prices . . . ." The expert concluded the sale comparison method was "a relevant and good method of valuation" for defendant's property because it is a private recreational beach and there was an "availability of recreational beach land sales in New Jersey."

The expert searched for comparable properties, which had a dune to discern if the dune added value. She explained how she found two beach front homes in Point Pleasant and compared the respective heights of their dunes. She further adjusted for the number of bathrooms, square footage, central air, beach square footage, land size, and a garage. She found that after "all the adjustments . . . , it shows . . . there's a [ten] percent benefit to a property with a higher dune. . . . [I]f you have a dune out on the beach in front of you, you're willing to pay a little bit more because you know your property's protected."

The expert concluded there was a five percent loss of value because of the loss of exclusivity by virtue of the fact the public could access the property. However, this factor did not have much weight because "hotel guests are on the site, [and] seasonal pass[] members are on the site. You have the public trust doctrine and you also have the boardwalk right of way." The expert testified the taking did not affect defendant's rights to occupy the property, lease it to local motels, mortgage, sell, or gift it.

In addition to the height of the dune, the DEP expert considered the "beach blanket" depth, meaning the impact of the dune on the area of sand used by beachgoers. She noted that before the taking defendant "had 238 feet that you could lay your blanket down on. . . . And then . . . after they put the dune on[,]

. . . you can't put your blanket on the dune, they'll have 120 feet." She noted "[t]he front of the property and the ocean frontage is where everyone goes. That's where it's used. That's where the value is." Even though defendant "lost some beach blanket area. [She] also took into consideration the extra [fifty-five] feet that the Army Corps or the State was going to create of more beach blanket depth." Therefore, the area added by the Army Corps "offset any value lost because they would have a right to . . . use of that extra [fifty-five] feet that was created." The expert further adjusted the value by the fact defendant would have to purchase a tidelands license to use the fifty-five-foot stretch of land created by the Army Corps. The license would cost $5,300.21 over a period of fifty years.

It is readily apparent the DEP's appraisal nowhere near approximated a net opinion. The expert methodically explained the factors she considered and rejected, the data sources she relied upon, and how she balanced the facts against the data to arrive at an opinion of value. We discern no error in admitting the DEP expert's opinion.

Defendant's attack on the expert's methodology and the value judgments she made in appraising the just compensation was explored by the thorough cross-examination conducted of the expert by defense counsel. However, the

alleged flaws in the appraisal the defense identifies on appeal do not convince us the expert's opinion was inadmissible. Indeed, paired sales methodology, the loss of exclusivity, and the height of the beach berm were all legitimate considerations for the appraisal, and all were explained by the expert. It was for the jury to accept or reject the expert's methodology rationale, and the thoroughness of the appraisal. These issues were not only explored during the defense's cross-examination, but also by adducing testimony from defendant's appraiser.

The trial judge did not abuse his discretion by admitting the DEP expert's opinion. Likewise, he did not err in denying defendant a JNOV, a new trial, or additur. Defendant's remaining arguments on this issue, including the UASFLA argument, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

III.

Defendant claims DEP counsel's summation invited the jury to speculate about facts not in evidence because counsel claimed DEP's expert could not use an income approach for valuation because she did not have defendant's financial information—implying defendant withheld it. Further, DEP's counsel misled the jury by defining the income valuation approach as income or revenue, rather

than net profit. Defendant emphasizes the expert never conducted an income approach valuation, yet DEP counsel led the jury to conclude that "data supplied by the operating statements would support a conclusion under the income approach consistent with [the expert's] after value opinion."

Counsel has "broad latitude in closing arguments." Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 83 (2008) (citing Bender v. Adelson, 187 N.J. 411, 431 (2006)). "Comments during summation, however, should be centered on the truth and counsel should not 'misstate the evidence nor distort the factual picture.'" Ibid. (quoting Bender, 187 N.J. at 431).

"[W]hen a lawyer observes an adversary's summation, and concludes that the gist of the evidence has been unfairly characterized, an objection will be advanced." Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 495 (2001). If no objection was advanced we review for plain error. Id. at 493. Under that standard, we "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2).

Defendant cites the following passages from DEP counsel's summation as evidence of impropriety:

> We talked about some of the money. I know [defense counsel] said in the closing he didn't want to

> call it profit. It's a profit. It doesn't matter, it's on the profit approach, the income approach so the income that matters that allows you to do the approach. We looked at the book, right, the appraiser Bible there and what did we learn? . . . Any property that has the potential to earn income can be utilized for the income approach, right?
>
> And there seemed to be some confusion when . . . [defendant's expert] was up here, as to whether the club was a nonprofit, it's not a nonprofit. We also learned it doesn't matter. He can apply the income approach to a nonprofit or for profit, it doesn't matter. Nonprofit to try to make it zero out after revenue, to stay nonprofit. But as the numbers showed, there is a profit moreover there's revenue, there is income every year before and after.
>
> . . . .
>
> [DEP's expert] didn't have that information and couldn't have possibly done one. The[re's a] reasonable inference as to why someone may have not done it or not supplied the information.

The defense did not object to this portion of the summation.

Defendant also cites to the following portion of the summation:

> Revenue . . . income before six figures every year $145,000, the company was earning income every year even after expenses, they're making a profit every year, several thousand dollars. Now, while this doesn't include taxes the way we made this chart . . . the taxes were about [forty percent], and you['re] still going to be like [sixty percent] . . . profit. Again[,] not necessarily a profit income.

> So, . . . these other charts will show you the same thing in essence . . . [The i]ncome approach wasn't available to [our expert]. Didn't use it. I would submit to you based on everything you heard you absolutely should have done it, the way she appraised things, and the testimony she was able to give it to you when she finally got it, just supports the position you heard from her.
>
> . . . .
>
> They're still making money right, right? Six figure profits every year.
>
> . . . .
>
> Hotel revenue, forty-one grand, in the [forties] before and after again a little less in this example because it's Covid. But you can see the motels confirmed it. The motels are still using the property, right. They're still paying to use the property. And this talk about, I'm not talking about a code but talks about only charging operating expenses and the like. That relates as we got a witness to admit to the public (indiscernible) beach badge. It doesn't relate to what (indiscernible)—

At this point defense counsel objected and there was a sidebar, which was not recorded.

We are unconvinced the unobjected to portion of the summation was clearly capable of producing an unjust result. The facts show the expert did not receive defendant's books and records to do a more complete analysis under the income approach. The portion of the summation the defense did object to does

not rise to reversible error because DEP's counsel was commenting on defendant's financial records, which defendant had a witness testify about, and was addressed in the defense's summation.

Finally, assuming this aspect of the summation was prejudicial, it was alleviated by the fact the trial judge gave the jury the model charge instructing them the attorneys' summations were not evidence, and the jury were the judges of the facts. "Indeed, '[o]ne of the foundations of our jury system is that the jury is presumed to follow the trial court's instructions.'" Hrymoc v. Ethicon, Inc., 467 N.J. Super. 42, 79 (App. Div. 2021) (alteration in original) (quoting State v. Burns, 192 N.J. 312, 335 (2007)). Our review of the record, including the verdict, which awarded defendant multiples of the just compensation amount the DEP argued was appropriate, does not convince us the jury ignored the instruction or that the summation prejudiced the outcome requiring us to reverse the jury verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION