**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0356-23

BOROUGH OF MONMOUTH
BEACH, a municipal corporation
of the STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LOUIS P. TSAKIRIS,

     Defendant-Appellant,

and

PROVIDENT BANK, FRANK MARX,
Administrator of the SMALL
BUSINESS ADMINISTRATION
and BOROUGH OF MONMOUTH
BEACH,

     Defendants.

_____

Argued October 29, 2024 – Decided January 24, 2025

Before Judges Smith, Chase, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3205-18.

John J. Reilly argued the cause for appellant (Bathgate Wegener & Wolf, PC, attorneys; Peter H. Wegener, of counsel and on the briefs; John J. Reilly and Daniel J. Carbone, on the briefs).

Paul V. Fernicola argued the cause for respondent Borough of Monmouth Beach (Paul V. Fernicola & Associates, LLC, attorneys; Paul V. Fernicola, of counsel and on the brief; Robert E. Moore, on the brief).

PER CURIAM

In this condemnation case, defendant Louis Tsakiris appeals from five trial court orders: a May 27, 2020 order permitting plaintiff, Borough of Monmouth Beach, to amend an easement description; a January 8, 2021 order denying defendant expert fees; an August 6, 2021 order preventing defendant from introducing portions of his engineering and appraisal reports related to "vibration" damages; a January 28, 2022 order barring loss of visibility and privacy claims; and an October 7, 2022 order barring defendant's engineering report as a net opinion. For the reasons which follow, we affirm.

I.

Defendant (Tsakiris) owns Block 48.01, Lot 10 in Monmouth Beach. On September 5, 2018, plaintiff Borough of Monmouth Beach (Borough) filed a complaint seeking to condemn a portion of the lot pursuant to the Eminent

A-0356-23

Domain Act[1] to repair seawall damage caused by Superstorm Sandy. The complaint cited "a distance of 117.65 feet" as part of the metes and bounds description of the subject property. However, the map of the easement area, attached as an exhibit to the complaint, recorded the disputed distance as 177.65 feet, not 117.65 feet.

The Borough deposited $16,500 with the Law Division as compensation for the taking. The trial court entered judgment and appointed condemnation commissioners, who awarded Tsakiris $7,000. He appealed, demanding a jury trial.

In February 2020, approximately sixteen months after filing its complaint, the Borough moved to amend pursuant to Rule 4:9-1. The Borough sought to amend the starting point in the complaint's metes and bounds description from "117.65" to "177.65" and to add the phrase "within Lot 10 Block 48.01." Tsakiris opposed the Borough's motion. He argued that the amendment would alter the proposed easement, and that the amendment should be considered a motion to vacate[2] the November 21, 2018 final judgment, which approved the taking and appointed commissioners. The trial court rejected Tsakiris' argument

---

[1] N.J.S.A. 20:3-1 to -50.

[2] See Rule 4:50-1.

A-0356-23

and granted the Borough's motion, finding among other things, that "the proposed amendment makes no change to the size of the area that is the subject of this action . . . The area taken is not changed in size nor interest." The court further found "the amendment is simply a clarification of the initial complaint and Exhibit A . . . ." Next, the court rejected Tsakiris' alternate theory, finding that if it were to consider the Borough's motion to amend as an application for relief from judgment, it still would have granted relief under Rule 4:50-1(f) because the application was brought in a reasonable time after the original entry of judgment.

On December 3, 2020, Tsakiris moved to compel reimbursement from the Borough for the cost of his original expert reports, which relied on the incorrect metes and bounds description in the original complaint. The trial court denied the motion.

By May 2021, Tsakiris produced two new expert reports. An engineering report prepared April 7, 2021 by Andrew Raichle, P.E., opined that it was "reasonably likely" that damage to Tsakiris' property resulted from vibrations caused by construction work on the seawall. An appraisal report prepared May 6, 2021 by Gary Wade, M.A.I., valued the vibration-related "taking damages" at $1,175,000. The trial court granted the Borough's motion to bar portions of the

4

reports related to "vibration damages." The court found that damages caused by the work of third parties on a public project are not compensable as just compensation for a taking.

On December 1, 2021, the Borough next moved to: preclude Tsakiris' claims of loss of visibility, loss of privacy, and enhanced storm risk stemming from construction of the seawall; and exclude the remainder of Tsakiris' engineering report as a net opinion as well as the corresponding reliant portions of the appraisal report. The trial court partially granted the motion, barring Tsakiris' claims for loss of view and privacy due to the Borough's taking. The trial court, relying on our well-settled condemnation jurisprudence,[3] found that the loss of view and privacy caused by the construction of a public project which is not on the property owner's taken lands is not compensable. The trial court denied the Borough's motion to preclude Tsakiris' claims for enhanced storm risk and exclusion of the engineering report, finding that an N.J.R.E. 104 hearing was required before making such a determination.

---

[3] Pub. Serv. Elec. & Gas Co. v. Oldwick Farms, Inc., 125 N.J. Super. 31 (App. Div. 1973); State v. Stulman, 136 N.J. Super 148 (App. Div. 1975); State by Comm'r of Tramp. v. Weiswasser, 149 N.J. 320 (1997); City of Ocean City v. Maffucci, 326 N.J. Super. 1, 12 (App. Div. 1999).

5

On March 1, 2022, the Borough deposed Raichle, and subsequently moved to bar Raichle's report as a net opinion on August 10. The court found Raichle presented an insufficient factual and scientific basis to support Tsakiris' theory that the seawall construction increased his property's vulnerability to future storms. The trial court cited to portions of Raichle's deposition, including the following testimony:

> Q: Did you perform any calculations when arriving at your conclusion that the seawall construction has increased the vulnerability of the subject property to wave-induced storm damage?
>
> Raichle: No.
>
> Q: Did you rely upon any approaches for estimating over-topping discharge rates when reaching your conclusion?
>
> Raichle: No.

The trial court granted the Borough's motion, finding that Raichle's opinion lacked the necessary foundation to satisfy the requirements of N.J.R.E. 703.

On August 23, 2022, the trial court entered final judgment memorializing a settlement between the parties for $16,500.

Tsakiris appeals, contending the trial court erred when it: granted the Borough's motion to amend its verified complaint and declaration of taking;

6

denied his request for expert fees; barred his claims for compensation for vibration damages, loss of visibility, and loss of privacy; and barred his engineering report. Tsakiris seeks a remand to the trial court on his claims for damages.

## II.

We review for abuse of discretion a trial court's order stemming from motions to: amend a complaint pursuant to Rule 4:9-1; vacate a final judgment pursuant to Rule 4:50-1; exclude "scientific expert testimony on the basis of unreliability in civil matters"; or hold a hearing pursuant to N.J.R.E. 104. See Port Liberte II Condo. Ass'n v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014) ("We review a trial court's decision to grant or deny a motion to amend [a] complaint for abuse of discretion."); 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 366 (App. Div. 2023) ("We review a motion under Rule 4:50-1 to vacate final judgment under an abuse of discretion standard."); In re Accutane Litig., 234 N.J. 340, 392 (2018) ("[T]he abuse of discretion standard applies in the appellate review of a trial court's determination to admit or deny scientific expert testimony on the basis of unreliability in civil matters."); Kemp v. State, 174 N.J. 412, 428 (2002) (quoting Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417 (3d Cir. 1999))

("Whether to hold [hearings under Rule 104(a)] rests in the sound discretion of the district court.").

An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002).

However, "[i]n construing the meaning of a statute, an ordinance, or our case law, our review is de novo." 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015) (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013)).

III.

A.

Tsakiris first argues that the trial court should not have allowed the Borough to amend its verified complaint and declaration of taking pursuant to Rule 4:9-1. "Under Rule 4:9-1, motions for leave to amend a complaint must 'be granted liberally,' but the decision is left to the trial 'court's sound discretion.'" C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306 (2023) (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456-57 (1998)). "When a party moves to amend a complaint after the time to amend

as-of-right has passed, the court's 'exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would . . . be futile.'" Ibid. (quoting Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006)). We discern no error in the trial court's sound finding that the Borough's amendment to the metes and bounds description was neither futile, nor prejudicial to Tsakiris. The record shows the court's findings were supported by well-documented facts in the record, and we conclude there was no abuse of discretion.

Tsakiris alternatively argues that the Borough's request to amend its verified complaint and declaration of taking was, in fact, a request to vacate the trial court's November 21, 2018 final judgment permitting the taking. We disagree and find this argument without merit. We note that the trial court rested its order on the premise that it was deciding a motion to amend pursuant to Rule 4:9-1, not a motion to vacate. Nonetheless, we make the following brief comment.

While motions pursuant to Rule 4:50-1(a), (b), and (c) must be filed "not more than one year after the judgment, order or proceeding was entered or taken[,]" motions pursuant to Rule 4:50-1(d), (e), and (f) "shall be made within a reasonable time[.]" R. 4:50-2. "The rule[s are] designed to reconcile the

strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." U.S. Bank Nat'l. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (internal quotation marks omitted). "We have explained that a reasonable time is determined based upon the totality of the circumstances . . . ." Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 296 (App. Div. 2021). The judge "has the discretion to consider the circumstances of each case . . . ." Ibid.

The trial court found that sixteen-months between the original entry judgment was reasonable. If this were the basis for the trial court's May 27, 2020 order, and we do not think it was, we could not conclude that the trial court abused its discretion when it determined that the Borough had satisfied the requirements of Rule 4:50-1(f), given the record below.

## B.

Tsakiris next argues that he is entitled to expert fees incurred from relying on the incorrect metes and bounds description in the Borough's initial verified complaint and declaration of taking. Tsakiris contends that the Borough's amendment to the original verified complaint demonstrates either that it did not have the right to condemn the property, or that it had "abandon[ed] . . . the description in the declaration of taking . . . ."

Defendants in partial condemnation cases are "entitled to compensation for the property, and damages, if any, to any remaining property, together with such additional compensation as provided for herein, or as may be fixed according to law." N.J.S.A. 20:3-29. Expenses for engineering and appraisal fees are compensable in cases where a court finds "the condemnor cannot acquire the real property by condemnation or, if the condemnation action is abandoned by the condemnor . . . ." N.J.S.A. 20:3-26(b); see also N.J.S.A. 20:3-35 (stating that, when a condemnation action is abandoned, "the condemnor shall pay the expenses of all condemnees who have appeared in the action"). Those same expenses may be compensable where there is a settlement of a condemnation action. N.J.S.A. 20:3-26(c).

The record shows that the Borough did not abandon the condemnation, nor did Tsakiris successfully defeat the Borough's right to condemn a portion of his property. Although the parties settled on August 22, 2023, Tsakiris did not seek "reasonable appraisal, attorney, and engineering fees" pursuant to N.J.S.A. 20:3-26(c). Tsakiris does not identify any other relief that is either provided by the Eminent Domain Act, or that "may be fixed according to law." N.J.S.A. 20:3-29. Because there is no legal recourse for defendant to obtain his expert

11

fees in the context of this condemnation action, we decline to disturb the trial court's decision.

## C.

Tsakiris argues that the trial court improperly barred the introduction of various form of damages, including: vibration-related; loss of view; and loss of privacy. Tsakiris alleges that these damages were caused by seawall construction, and that he is entitled to compensation. Tsakiris contends that damages to his remainder property caused by the construction of the seawall on his taken property should be included in just compensation calculations when "[t]he damages which resulted were a necessary, natural, and proximate result of the taking and the project." Tsakiris asserts that "[a]n owner should not be forced to defend the condemnation action and also separately have to sue for project damages that the public project foresaw and actually occurred." We are not persuaded.

New Jersey municipalities have "the authority to take private property for a public use provided that just compensation is paid to the property owner." Twp. of Manalapan v. Gentile, 242 N.J. 295, 305-06 (2020) (citing U.S. Const. amend. V; N.J. Const. art. 1, ¶ 20; N.J.S.A. 20:3-29).

> [W]hen a public project requires the partial taking of property, 'just compensation' to the owner must be

A-0356-23

based on a consideration of all relevant, reasonably calculable, and non-conjectural factors that either decrease or increase the value of the remaining property. In a partial-takings case, homeowners are entitled to the fair market value of their loss, not to a windfall, not to a pay out that disregards the home's enhanced value resulting from a public project. To calculate that loss, we must look to the difference between the fair market value of the property before the partial taking and after the taking.

[Borough of Harvey Cedars v. Karan, 214 N.J. 384, 389 (2013).]

"The fair-market considerations that inform computing just compensation in partial-takings cases . . . are the considerations that a willing buyer and a willing seller would weigh in coming to an agreement on the property's value at the time of the taking and after the taking." Id. at 412.

In a partial-takings case, any claims flowing from the negligent actions of others are separate actions which lie outside the condemnation case. In our view, the trial court properly barred the introduction of vibration damages.

We next conclude that the trial court correctly precluded the introduction of any evidence related to the loss of view or privacy. "The critical factor . . . in determining if loss of visibility is a compensable element of damages in a partial-taking condemnation, is whether the loss arises from changes occurring on the property taken." Weiswasser, 149 N.J. at 344. "A party seeking

severance damages pursuant to a partial condemnation may only recover for losses in value directly attributable to the taking itself, however." State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., Ltd. P'ship, 426 N.J. Super. 337, 358 (App. Div. 2012) (citing Weiswasser, 149 N.J. at 341). We have consistently held that property owners are only entitled to just compensation damages caused by the government's use of land that it took from them. See Id. at 358-59 ("Because defendants attributed their internal circulation problems—and hence their loss of value—solely to the access modification, any loss they experienced therefore did not arise directly from property taken and therefore severance damages were not recoverable."); Stulman, 136 N.J. Super. at 345 ("Nor is there any substance to the argument[] . . . that . . . he is entitled to compensation for the alleged loss of visibility of his property resulting, not from the partial taking, but from the construction of the new network or complex of highways on property formerly belonging to others."); Oldwick Farms, Inc., 125 N.J. Super. at 38 ("Since it is here practicable to separate the use of the land taken from that of the adjoining land, defendant is entitled to compensation only for the land taken and the use to which it will be put, and not for the use which will be made of the adjoining lands.").

The record shows that the loss of view and privacy which Tsakiris argues should be compensated was caused by the construction of a portion of the seawall not on his property. The trial court's order was not error.

D.

Finally, Tsakiris claims that the trial court abused its discretion when it excluded the engineering expert report produced by Raichle as a net opinion. Tsakiris also argues that the trial court failed to conduct a hearing pursuant to N.J.R.E. 104(a) prior to determining whether to exclude the report.

"New Jersey Rules of Evidence 702 and 703 control the admission of expert testimony." In re Accutane Litig., 234 N.J. at 348.

> N.J.R.E. 702 sets forth three basic requirements for the admission of expert testimony: (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [State v. Derry, 250 N.J. 611, 632-33 (2022) (quoting State v. Torres, 183 N.J. 554, 567-68 (2005)).]

"Those requirements are construed liberally in light of Rule 702's tilt in favor of the admissibility of expert testimony." State v. Jenewicz, 193 N.J. 440, 454 (2008).

A-0356-23

Pursuant to N.J.R.E. 703, an expert opinion must be based on

> facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject.
>
> [Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)).]

N.J.R.E. 703's corollary, the net opinion rule, "stands for the proposition that an expert opinion must have a rational basis" and prohibits admitting an expert's opinion into evidence if its conclusions are "not supported by factual evidence or other data." Crispino v. Twp. of Sparta, 243 N.J. 234, 257 (2020) (citing Townsend, 221 N.J. at 53-54). "[T]he net opinion rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). "[B]are conclusions, unsupported by factual evidence, [are] inadmissible." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981); see also Fin. Servs. Vehicle Tr. v. Panter, 458 N.J. Super. 244, 257 (App. Div. 2019).

The net opinion rule does not impose a "standard of perfection." Townsend, 221 N.J. at 54. Rather, it "is a prohibition against speculative testimony." Ehrlich v. Sorokin, 451 N.J. Super. 119, 134 (App. Div. 2017)

(quoting Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013)). A judge should not admit expert testimony "if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 299 (App. Div. 1990) (quoting Clearwater Corp. v. Lincoln, 202 Neb. 796 (1979)).

Applying these principles, we find the trial court properly exercised its discretion in excluding Raichle's report as a net opinion based on his deposition testimony. The record shows Raichle's deposition testimony concerning the basis for his opinions proved to be his undoing. When asked about whether he "perform[ed] any calculations" to determined increased vulnerability to flooding or "rel[ied] upon any approaches for estimating over-topping discharge rates," Raichle answered no.

We also find no abuse of discretion in the trial court's decision not to conduct a hearing pursuant to N.J.R.E. 104(a). Under N.J.R.E. 104(a), a trial court may hold a hearing to determine "any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." "[O]rdinarily the best practice would be for a trial judge to permit the examination of the scope of an expert's opinion—when its admissibility is

challenged—at a pretrial N.J.R.E. 104(a) hearing." <u>Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC</u>, 450 N.J. Super. 1, 100 n.50 (App. Div. 2017) (citing <u>Kemp</u>, 174 N.J. at 432). However, where an expert has been "examined at great length at [their] deposition about [their] methodology and that deposition testimony was available to and considered by the trial judge at the time of [their] ruling[,]" our court has found that a trial court does not err in failing to conduct a <u>Rule</u> 104 hearing. <u>See</u> <u>ibid.</u>

When it initially denied the Borough's motion to bar Tsakiris' claims for enhanced vulnerability and to bar Raichle's report as a net opinion, the trial court made clear that it did not want to decide the issue without first conducting a Rule 104 hearing. However, the court also stated that the Borough could pursue the motion to bar "on a more complete record at . . . a later date." The Borough subsequently deposed Raichle and refiled its motion to exclude his report as a net opinion, citing to Raichle's deposition transcript. Having reviewed the record, we find no error in the trial court's decision to exclude Raichle's report without having conducted a <u>Rule</u> 104 hearing.[4]

---

[4] This case is distinguishable from <u>Kemp v. State</u>, 174 N.J. 412 (2002). In <u>Kemp</u>, the Supreme Court found that the trial court erred when it ruled on the admissibility of an expert opinion without first conducting a <u>Rule</u> 104 hearing. <u>Id.</u> at 432-33. Unlike in <u>Kemp</u>, the expert in this case did not perform any

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

calculations for the increased vulnerability. A Rule 104 hearing would not have afforded a "more balanced and complete presentation" of Raichle's methodology. Id. at 432.