**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2148-24

FRANCIS E. BOROWSKY, JR.
and PAULINA A. BOROWSKY,
his wife,

      Plaintiffs-Appellants,

v.

U-HAUL OF MIDDLETOWN,
U-HAUL COMPANY OF NEW
JERSEY, INC., U-HAUL
INTERNATIONAL, INC.,

      Defendants-Respondents.

_____

Argued May 11, 2026 – Decided June 22, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3398-21.

Frank E. Borowsky, Jr. argued the cause for appellants (Borowsky & Borowsky, attorneys; Frank E. Borowsky, Jr., on the briefs).

Richard J. Williams, Jr. argued the cause for respondents (McElroy Deutsch Mulvaney & Carpenter

LLP, attorneys; Richard J. Williams, Jr. and Colden R. Gosselin, of counsel and on the brief).

PER CURIAM

Plaintiffs Francis E. Borowsky and Paulina A. Borowsky[1] appeal from trial court orders denying their motions for partial summary judgment and to bar defendants'[2] expert opinion. Based on our review of the record and governing legal principles, we affirm both orders for the cogent reasons expressed by Judge Chad N. Cagan in his detailed oral decision.

## I.

The following relevant facts are derived from the record. On August 16, 2020, plaintiff was assisting his son with moving items from an apartment in Hoboken, using a rented U-Haul truck. The truck was a 2019 Ford cab and chassis with a box-type body designed by U-Haul International, Inc. and manufactured by a subsidiary.

The truck's cargo area floor was approximately thirty-three inches above ground level, and a galvanized steel step bumper was attached about twenty inches above the ground, resulting in a riser height of thirteen inches between

---

[1] We refer to Frank K. Borowsky as "plaintiff" in this opinion as Paulina A. Borowsky's claims are per quod only.

[2] We refer to all U-Haul entities collectively as "defendants."

A-2148-24

the step bumper and the cargo area. The step bumper featured raised metal holes, referred to as "halos" or "coins," designed to provide traction and prevent water accumulation. The edge of the cargo bed, at the threshold of the cargo area, was a bare metal surface with allegedly no slip-resistant features or markings to delineate the edge. The truck was equipped with a loading ramp and handholds for safety when entering or exiting the cargo area. Adjacent to the threshold, inside the cargo area, was a grooved aluminum panel designed to provide traction, while the remainder of the cargo area floor was plain steel.

On the date of the incident, it was raining intermittently, and the street, sidewalk, and outdoor surfaces were wet. Plaintiff and others made between seven and ten trips loading items into the truck with no incident, with plaintiff stepping up onto the step bumper and into the cargo area each time.

On his final trip, after placing a piece of furniture in the truck, plaintiff moved to the back of the cargo area to exit. As he stepped down from the cargo area onto the step bumper, his foot slipped, causing him to fall face-first into the street below. Plaintiff sustained serious injuries, including a shattered alveolar bone, the loss of several teeth, permanent loss of sensation in his upper lip and mouth, and facial disfigurement.

A-2148-24

Plaintiff commenced this action by filing a complaint in October 2021. The complaint asserted claims for products liability and negligence collectively against defendants. The complaint alleged that plaintiff sustained injuries when he slipped and fell and asserted the truck design was defective. Defendants filed an answer denying liability and asserting various defenses, including comparative negligence against plaintiff.

The parties engaged in extensive discovery, lasting nearly one-thousand days, including several discovery end date extensions, two arbitration adjournments and two trial adjournments. Both parties obtained experts who submitted reports with conflicting opinions.

Plaintiff presented the opinion and report of Michaela Kuba, P.E. (Kuba), a metallurgical engineer with experience in failure analysis and tribological[3] testing. Kuba visually inspected the subject truck and performed coefficient of friction testing at the area where plaintiff slipped, using a BOT-3000e tribometer

---

[3] Tribology is the study of surfaces moving relative to one another and includes three key topics: friction, wear, and lubrication. The Society of Tribologists and Lubrication Engineers, About STLE, www.stle.org/files/About_STLE/tribology/files/What_is_tribilolgy.aspx. (last visited June 3, 2026).

A-2148-24

device.[4]   Her testing was conducted according to the American National Standards Institute and the National Floor Safety Institute standards and found that the dynamic coefficient of friction (DCOF) at the threshold was at the minimum value generally accepted for wet exterior surfaces at 0.55.   Kuba opined that this was inadequate for the truck in question, given the step height, mixed surface textures and the foreseeable risk of users carrying heavy items in wet conditions.

Kuba concluded that the design was defective because the bare metal edge lacked slip-resistance features, especially in light of the presence of such features elsewhere on the trucks of competitors' vehicles.  She identified several reasonable alternative designs, including extending the grooved aluminum panel to the edge, applying slip-resistant tape or coatings, or coining the edge, all of which she opined would be simple, cost-effective, and would not impair the truck's utility.  Kuba also noted the absence of adequate warnings regarding the risk of slipping at the threshold.

---

[4] This device is designed to measure the slip resistance of flooring and walkway surfaces and mechanically tests both wet and dry surfaces to determine DCOF. Walkway Management Group, <u>BOT-3000E Package</u>, https://store.walkwaymg.com/products/bot-3000e-kit.   (last visited June 3, 2026).

A-2148-24

Defendants presented the expert report of Dr. Zdenek Hejzlar, Ph.D., CSP, (Hejzlar) a safety and human factors consultant with extensive experience in slip, trip and fall analysis. Hejzlar's report detailed his inspection of the subject vehicle and tribometry testing of the truck bed and threshold, using an ASM 825A tribometer[5] and various types of footwear. His testing found SCOF ranging from 0.35 to 0.74, depending on the location and shoe type, with the threshold area generally meeting or exceeding the minimum values cited in voluntary industry standards.

Hejzlar opined that there are no mandatory federal or state standards for slip resistance in cargo areas of moving trucks, and that U-Haul's truck design was not unreasonably dangerous. He further opined that plaintiff increased his risk of injury by not using available safety features such as the handholds and loading ramp, and environmental factors, such as parking location and weather, contributed to the risk. Hejzlar also offered alternative theories for the fall, suggesting that plaintiff may have overstepped the edge, causing his foot to rotate over the nosing and slip, a mechanism he described as common in stair

---

[5] ASM 825 tribometers test the Static Coefficient of Friction, defined as how much force is required to initiate horizontal movement, or a slip. American Slip Meter, Inc., About Slip Meters, https://americanslipmeter.com/info/ (last visited June 3, 2026).

A-2148-24

descent incidents. He concluded that the system safety provided by the truck enabled prudent users to load and unload safely, and that the design was not defective or unreasonably unsafe.

Following discovery, plaintiff moved for partial summary judgment as to liability only, seeking a limited determination that the truck was defectively designed as a matter of law and requesting that the trial be limited to damages. Additionally, plaintiff's motion sought to prevent defendant from submitting the defenses of comparative negligence and proximate cause to the jury. As a separate and distinct matter, plaintiff also moved to bar the testimony of Hejzlar, on the grounds that his report constituted a net opinion. Defendants opposed the motion, arguing that there were genuine issues of material fact regarding the alleged design defect and their expert's report was not a net opinion, precluding summary judgment as a matter of law.

The trial court heard extensive oral arguments on the motion in January 2025. After considering the parties' submissions and arguments, the court denied plaintiff's motion to bar defendants' expert opinion and denied his motion for partial summary judgment.

Regarding defendants' expert's report, the trial court concluded that the opinion was not a net opinion. After an extensive review of his expert report

7

the court found it "[was] satisfied . . . under the particular circumstances here that this is not a net opinion . . . [and] that this expert report in fact provides the why and wherefore for the conclusions that were reached[.]" In support of its conclusion, the court stated that "what's very, very clear [in the report] . . . is that the defendant['s] expert[] performed the same scientific testing as the plaintiff['s] expert[] did[;] the coefficient of friction."

The court noted that the "experts have competing conclusions" as to the danger of the design of the truck, stating:

> The defense expert concludes that the system safety provided by the U-Haul's subject truck design enables prudent users to accomplish loading and unloading in a safe manner and is not unreasonably dangerous. The experts, conducting the same type of scientific testing, slip resistance testing, come to different conclusions, and those are fact questions for the jury.
>
> . . . .
>
> I am very much satisfied based on this record that this expert report provides the why and wherefore . . . [T]his expert report sets forth how they conducted a scientific slip resistance testing, the coefficient of friction. They applied applicable standards. They examined the actual truck. They distinguished the findings set forth frankly in [] Ms. Kuba's report. But this is not simply a report that sets forth a conclusion without any analysis. Quite to the contrary. This report sets forth all these testing and review of scientific literature, standards and codes, inspection, and tribometry testing of the subject truck.

8

Thus, the court denied plaintiff's application to bar Hejzlar's report as a net opinion.

Concerning plaintiff's partial summary judgment motion, the court found that "there [were] questions of material fact that require submission to the jury." The court noted that:

> The parties hotly dispute the underlying issue as to whether or not the bay area, the cargo bay area of this U-Haul was defectively designed, and the defense expert says [it was] not defectively designed. The plaintiffs' expert says [it was] defectively designed.

The court concluded there were competing expert reports and the findings and subsequent conclusions in the reports were hotly contested, resulting in questions of fact for the jury to consider. Thus, the court denied plaintiff's motion for partial summary judgment.

In its findings, the court also referenced plaintiff's attempts to strike defendants' comparative negligence claim and its proximate cause defense but ultimately did not address these issues, finding "the issue presented . . . [was] whether summary judgment should be granted as to liability when there are questions of fact as to whether or not the U-Haul truck was defectively designed." The court noted that plaintiff's "primary position is that a product is

defectively designed when it could have been designed in an alternative manner so as to minimize or eliminate the risk of harm . . . ."

The case ultimately proceeded to trial before a different judge. Following the presentation of testimony and evidence by each party, the jury returned a verdict in favor of defendants, finding that the truck was not defectively designed and that any failure to provide adequate warnings was not a proximate cause of the accident. Notably, the jury did not reach the issues of comparative negligence or proximate causation. At no point did plaintiff move for a directed verdict, nor did he challenge the verdict through any post-trial motion. The court accordingly entered judgment dismissing plaintiff's complaint.

Plaintiffs appeal the trial court's orders denying their motion to bar defendants' expert opinion, denying partial summary judgment, and denying, as moot, plaintiff's motion to strike defendants' comparative negligence and proximate cause affirmative defenses.

II.

A.

We begin by addressing plaintiff's contention that Hejzlar's opinion should have been barred as a net opinion. Plaintiff offers several arguments supporting his position for inadmissibility, including: (1) Hejzlar did not

10

specifically address competitors designs; (2) the opinion related to the "risk-utility" analysis rather than "alternative safer design;" (3) the report and conclusions were not based on anything; (4) his reference to "prudent users" was inappropriate; (5) his conclusion about plaintiff "increasing his risk of injury" is speculative; and (6) his remaining conclusions were not required for the analysis by a lay person.

We conclude plaintiff's arguments on these points lack sufficient merit to warrant an extensive discussion in a written opinion and affirm substantially for the reasons expressed by the trial court. R. 2:11-3(e)(1)(E). We address selective issues for the sake of clarity.

"[W]e apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). The exclusion or admission of an expert's opinion is "committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)) and is governed by N.J.R.E. 702 and N.J.R.E. 703. Id. at 53.

> N.J.R.E. 702 sets forth three basic requirements for the admission of expert testimony: (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to

11

must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[State v. Derry, 250 N.J. 611, 632-33 (2022) (quoting State v. Torres, 183 N.J. 554, 567-68 (2005)).]

"Those requirements are construed liberally in light of Rule 702's tilt in favor of the admissibility of expert testimony." State v. Jenewicz, 193 N.J. 440, 454 (2008).

Pursuant to N.J.R.E. 703, an expert opinion must be based on

facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject.

[Townsend, 221 N.J. at 53 (quoting State v. Townsend, 186 N.J. 473, 494 (2006)).]

N.J.R.E. 703's corollary, the net opinion rule, "stands for the proposition that an expert opinion must have a rational basis" and prohibits admitting an expert's opinion into evidence if its conclusions are "not supported by factual evidence or other data." Crispino v. Tp. of Sparta, 243 N.J. 234, 257 (2020) (citing Townsend, 221 N.J. at 53-54). "[T]he net opinion Rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere

conclusion." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). "[B]are conclusions, unsupported by factual evidence, [are] inadmissible." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981); see also Fin. Servs. Vehicle Tr. v. Panter, 458 N.J. Super. 244, 257 (App. Div. 2019).

The net opinion Rule does not impose a "standard of perfection." Townsend, 221 N.J. at 54. Rather, it "is a prohibition against speculative testimony." Ehrlich v. Sorokin, 451 N.J. Super. 119, 134 (App. Div. 2017) (quoting Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013)). A judge should not admit expert testimony "if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 299 (App. Div. 1990) (quoting Clearwater Corp. v. Lincoln, 202 Neb. 796 (1979)).

In concluding that the defendants' expert opinion was not a net opinion, the court determined that both parties' experts utilized the same scientific testing and methodology surrounding the slip resistance in the truck's loading area, and further found defendant's expert conducted extensive testing when coming to its conclusion that the design of defendants' truck enables users to accomplish loading and unloading in a safe manner. The court also found that defendants'

expert report sets forth the basis for his opinion through scientific slip resistance testing. The court found Hejzler's report sets forth a conclusion based on all the testing and review of scientific literature, standards and codes, inspection, and tribometry testing of the subject truck.

We are satisfied, based on Judge Cagan's detailed findings, that defendants' expert opinion is not a net opinion. We add only that the opinion has a rational basis and is clearly supported by factual evidence, data, and testing, including substantially the same testing utilized by plaintiff's expert. We further determine the opinion provides the whys and wherefores, not just mere conclusions. For these reasons, the trial court's denial of plaintiff's motion to strike defendant's expert opinion as a net opinion was not an abuse of discretion.

## B.

We next turn to plaintiffs' contention that the court erred by denying their motion for partial summary judgment for liability only. Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend, 221 N.J. at 59. Summary judgment must be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

14

R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Insurance Co. of Am., 142 N.J. 520, 540 (1995). We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

The New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, governs products liability issues in this State. When our Legislature enacted the PLA, it "established 'one unified, statutorily defined theory of recovery for harm caused by a product, and that theory is, for the most part, identical to strict liability.'" Dean v. Barrett Homes, Inc., 204 N.J. 286, 294 (2010) (quoting In re Lead Paint Litig., 191 N.J. 405, 436 (2007)). The PLA is "remedial legislation," enacted to "establish clear rules" in claims "for damages for harm caused by products, including certain principles under which liability is imposed." McDarby v. Merck & Co., 401 N.J. Super. 10, 97 (App. Div. 2008) (quoting Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 47-48 (1996)).

"A product liability action is defined as 'any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the

claim, except actions for harm caused by breach of an express warranty.'" Sinclair v. Merck & Co., 195 N.J. 51, 62 (2008) (quoting N.J.S.A. 2A:58C-1(b)(3)).  The PLA provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it:  a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.
>
> [N.J.S.A. 2A:58C-2.]

In other words, a "prerequisite" for recovery under the PLA "is the existence of a defective condition."  Zaza, 144 N.J. at 49.

To prove a design defect under the PLA as pled by plaintiff herein, they must establish that the product was "designed in a defective manner."  N.J.S.A. 2A:58C-2(c).  Moreover, a plaintiff must demonstrate that the product "was not reasonably fit, suitable or safe for its intended purpose."  Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990) (quoting N.J.S.A. 2A:58C-2).  Accordingly, a plaintiff must prove either that the product's risk outweighs its

16

utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm. Lewis, 155 N.J. 569.

Plaintiff's theory is centered upon the "reasonable alternative design" theory we outlined above. Plaintiff primarily asserts that a product is defectively designed if it "'could have been designed in an alternative manner so as to minimize or eliminate the risk of harm.'" Cavanaugh v. Skil Corp., 331 N.J. Super. 134, 162 (App. Div. 1999), aff'd, 164 N.J. 1 (1999) (quoting Lewis, 155 N.J. at 570).

The defense expert report references the alternative designs proffered by Kuba and contests their applicability to the facts in this matter and challenges the conclusions drawn therefrom. Specifically, in his report for the defense, Hejzlar concluded that the U-Haul design was reasonably safe based on extensive testing, which we reiterate was substantially the same testing performed by Kuba.

We recently held that the alternative design standard has two parts. The first part being that "[a] product . . . is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . . [and the second part requiring that] the omission of the alternative design renders the product not reasonably

safe."  Berkoski v. Honda Motor Co., 480 N.J. Super. 379, 392-93 (App. Div. 2025) (quoting Restatement (Third) of Torts:  Prods. Liab. § 2(b) (A.L.I. 1998)) (emphasis added).  Simply put, a plaintiff cannot succeed in a products liability action solely by proffering alternative designs; they must also show that the omission of such a design renders the product not reasonably safe.

We conclude here that Hejzlar's report squarely contests plaintiff's expert report concerning the second element of the alternative design test and opines that the design of the truck is reasonably safe.  He arrived at this conclusion through his extensive testing, as noted and relied upon by the trial court.  We further reject plaintiff's contention that defendant's expert did not conduct a thorough examination of the designs of competitors.  Hejzlar's report states that defendants' design is similar to that of their competitors in reference to their rear cargo area step bumper and height access to the cargo area.  His testing also reveals that the slip coefficient is well within an acceptable range, and thus he systemically refutes plaintiff's expert's conclusions.  Additionally, he opines that human factors played a role in the incident, largely citing to plaintiff's lack of use of the loading ramp and safety handholds as well as other factors, including parking location and loading during rain.

A-2148-24

Based on the foregoing reasons, we conclude plaintiff's contention that the subject truck was defective as a matter of law simply because its expert opined that alternative designs existed lacks merit. Plaintiff's analysis omits the second element required to prove an alternative design claim, which is a critical element of this category of products liability claim and necessitated denial of his summary judgment motion. Here, Hejzlar's report provides a detailed and comprehensive rebuttal of the positions relied upon by plaintiff's expert and creates multiple disputed issues of material fact that required a jury determination as the court determined. Judge Cagan's denial of plaintiff's summary judgment motion, therefore, was not error.

C.

Lastly, we briefly address plaintiff's contention that the trial court erred in failing to strike defendant's comparative negligence and proximate cause defenses as asserted in his summary judgment motion.

The parties hotly contest the procedural history concerning this issue. Plaintiff argues that defendant waived opposition by not factually refuting or addressing the attempts to strike the defenses as part of the summary judgment motion while defendants argue that because plaintiff moved to strike the defenses in a motion in limine prior to trial, which was denied, but did not appeal

19

such, he waived this argument on appeal. We note that the trial court declined to rule on this issue during oral argument in the summary judgment motion because the issues centered around defendant's liability as a matter of law, not proximate cause, or plaintiff's comparative negligence.

We deem this procedural dispute moot because we have affirmed the trial court's denial of plaintiff's motion to strike defendants' expert report as a net opinion and also have affirmed the court's order denying plaintiff's summary judgment motion. Thereafter, at trial, based on the sequence of questions on the jury verdict sheet, the jury never reached the issues of comparative negligence and proximate cause since they previously determined that defendant's design was not defective.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2148-24